No. 224, Misc. SIMMONS *v.* UNION NEWS Co. C. A. 6th Cir. Certiorari denied. *Dee Edwards* for petitioner. *Frederic S. Glover, Jr.,* for respondent. 

MR. JUSTICE BLACK, with whom THE CHIEF JUSTICE concurs, dissenting.

I would grant certiorari in this case. While petitioner presents other interesting and important questions concerning the right of trial by jury under the Seventh Amendment and concerning the power of a district court to grant summary judgment, my opinion is addressed to the question of whether the courts below were right in denying petitioner Simmons a court trial of her claim that she had been wrongfully discharged without "just cause" in violation of the collective bargaining agreement under which she was employed. The ground for refusing to let her try her case was that her employer and her union had agreed between themselves that her discharge was for "just cause." I think the courts below were wrong. The material facts upon which I base my conclusion are these:

Petitioner was one of about a dozen employees working at the lunch counter in respondent's restaurant in a railway station. For about a year prior to petitioner's discharge, profits at the lunch counter lagged behind those expected by respondent. Respondent suspected that this was due either to the mishandling or to the actual stealing of its funds or goods. The collective bargaining agreement provided that no employee should be discharged without "just cause" and that prospective discharges would be discussed by the employer and the union. Pursuant to the contract, the company's representative went to the union's representative to discuss what could be done in order to improve the profit situation at the lunch counter. The company representative suggested that all of the counter employees be discharged and others take

their places. The union representative objected. After lengthy negotiations, however, a plan was agreed upon by the company and the union under which five of the employees would be immediately laid off for a two-week period. If at the end of the period, records indicated that there was a significant improvement in the company's business at the lunch counter, it was agreed that the five employees were to be discharged. The five were laid off including the petitioner and Gladys Hildreth.[1] When the company convinced the union that the lunch counter profits had increased during the period, the union agreed with respondent that the workers should be discharged permanently. Both petitioner and Miss Hildreth vigorously protested. They urged the union to carry their protest all the way up through the various stages of negotiations leading to arbitration. The union representative, however, refused to give any help to petitioner and Miss Hildreth. Then, petitioner, by herself, took the matter up with the company, endeavoring to settle it as a personal grievance of her own. The company refused to negotiate with petitioner in any way whatever, notwithstanding § 9 (a) of the National Labor Relations Act, as amended,[2] which states in part, "That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect." Petitioner, out of a job, then brought this action against the company for the alleged breach of contract in discharging her.

---

[1] See *Union News Co.* v. *Hildreth*, 295 F. 2d 658; *Hildreth* v. *Union News Co.*, 315 F. 2d 548, certiorari denied, 375 U. S. 826.

[2] 61 Stat. 143, 29 U. S. C. § 159 (a) (1964 ed.).

Although this Court has gone very far in some of its cases with reference to the power of a collective bargaining union to process the personal grievances of its members, it has not yet gone so far as to say that where there is a personal grievance for breach of a collective bargaining agreement, the employee can be deprived of an independent judicial determination of the claim by an agreement between the union and the employer that no breach exists. But this is exactly what was done to petitioner and Miss Hildreth. Though I dissented in *Republic Steel Corp.* v. *Maddox,* 379 U. S. 650, I was, and still am of the belief that the majority opinion purported to preserve the right of an employee to sue his employer if his union refused to press his grievances. However, I fear that the decisions below in the *Hildreth* case and in this one go a long way toward effectively destroying whatever redress this Court left the individual employee in *Maddox.* The courts below refused to make their own determination of whether Miss Hildreth's and petitioner's discharges were made for "just cause." Instead, they allowed the employer's defense that "just cause" was simply what the employer and the union jointly wanted it to be. While we often say that nothing is decided by a denial of certiorari, all of us know that a denial of certiorari in this case, following the denial of certiorari in the *Hildreth* case, will undoubtedly lead people to believe, and I fear with cause, that this Court is now approving such a forfeiture of contractual claims of individual employees.

This case points up with great emphasis the kind of injustice that can occur to an individual employee when the employer and the union have such power over the employee's claim for breach of contract. Here no one has claimed from the beginning to the end of the *Hildreth* lawsuit or this lawsuit that either of these individuals was guilty of any kind of misconduct justifying her discharge. Each was one of twelve employees engaged in

the operation of a lunch counter. In the *Hildreth* case respondent's supervisor testified that he had no knowledge that any of the employees discharged were in any way responsible for the lunch counter's unsuccessful operation. The manager of the lunch counter stated that he did not know of "one single thing" that Miss Hildreth had done to reduce the counter's profits. We must assume that had petitioner here been given an opportunity to try her case, the same facts would have appeared. Moreover, petitioner alleges that she was prepared to show that subsequent to her discharge, the office girl who counted the money received at the lunch counter was found to be embezzling those funds and was discharged for it. Miss Hildreth had worked for respondent for nine and one-half years, and petitioner for fifteen years, prior to their discharges. There is no evidence that respondent had ever been dissatisfied with their work before the company became disappointed with its lunch counter about a year prior to the discharges. Yet both were discharged for "just cause," as determined not by a court but by an agreement of the company and the union.

I would not construe the National Labor Relations Act as giving a union and an employer any such power over workers. In this case there has been no bargain made on behalf of all the workers represented by the union. Rather there has been a sacrifice of the rights of a group of employees based on the belief that some of them might possibly have been guilty of some kind of misconduct that would reduce the employer's profits. Fully recognizing the right of the collective bargaining representative to make a contract on the part of the workers for the future, I cannot believe that those who passed the Act intended to give the union the right to negotiate away alleged breaches of a contract claimed by individual employees.

The plain fact is that petitioner has lost her job, not because of any guilt on her part, but because there is a

suspicion that some one of the group which was discharged was guilty of misconduct. The sum total of what has been done here is to abandon the fine, old American ideal that guilt is personal. Our system of jurisprudence should not tolerate imposing on the innocent punishment that should be laid on the guilty. If the construction of the labor law given by the courts below is to stand, it should be clearly and unequivocally announced by this Court so that Congress can, if it sees fit, consider this question and protect the just claims of employees from the joint power of employers and unions.