Gerald SERRA, Plaintiff,

v.

PEPSI–COLA GENERAL BOTTLERS, INC., an Illinois corporation, Defendant.

No. 65 C 937.

United States District Court
N. D. Illinois, E. D.

Dec. 29, 1965.

8. Rule 56, Federal Rules of Civil Procedure.

Philip R. Davis, Chicago, Ill., for plaintiff.

Richard L. Marcus, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant.

WILL, Judge.

Plaintiff, a discharged employee of the Pepsi-Cola General Bottlers, Inc. (hereinafter called Pepsi), brings this action against his former employer for reinstatement and back pay. Defendant moved to dismiss, and we deferred ruling on the motion until a factual question was resolved by affidavits. The affidavits having now been submitted establish the following: (1) Mr. Serra, through his attorney, requested that the union press his grievance with the employer as far as was possible under the collective agreement, (2) the union refused to act on behalf of the plaintiff, (3) the defendant-employer did not refuse any union demand to process the grievance, and (4) Pepsi only refused the plaintiff's own demand to institute the grievance procedure. Thus the employee has attempted to get the union to process his grievance. He has also attempted to get the employer to do so. Both attempts have failed.

Plaintiff, after being rebuffed by the union and employer, brings this action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).[1] Pepsi's motion to dismiss raises the question of whether an employee, who claims that his employer has breached the collective contract, can bring an action against the employer on that contract in the federal courts. Obviously this is an extremely significant question in the field of labor law. We conclude that the labor laws do permit this suit against the employer.

Pepsi, relying heavily on Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), argues that an employee is precluded from bringing an action against his employer. Pepsi contends that it is only the union which has the right to bring suits against an employer under § 301. Reliance on Maddox, however, is unwarranted, for that decision expressly did not decide the issue in this case. Maddox merely held that suits under § 301 for severance pay fall within the well established rule that the employee must exhaust, or attempt to exhaust, his contract remedies before bringing an action against his employer. The problem presented to the court in Maddox was that under the Railway Labor Act a suit for severance pay could be brought directly against an employer without the necessity of attempting to use the contract procedures. The plaintiff in Maddox sought to have the court carry over that doctrine to the Labor Management Relations Act. Refusing to do so, the court also indicated some discontent with this practice under the RLA.

Maddox is, however, important for our purposes in at least two respects. First, it clearly indicates that it is not just the union but it is also the employee who has rights under the contract. The statement by the court that "individual employees wishing to assert contract grievances" must first seek to use the "contract grievance procedure" supports such a proposition. Second, the opinion focuses directly on the present problem in the following way:

As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress. If the union refuses to press or only perfunctorily

1. Section 301(a) provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

presses the individual's claim, differences may arise as to the forms of redress then available. See Humphrey v. Moore, 375 U.S. 335 [84 S. Ct. 363, 11 L.Ed.2d 370]; [National] Labor [Relations] Board v. Miranda Fuel Co., [2 Cir.] 326 F.2d 172.

The affidavits establish that this case falls beyond the Maddox decision, for here the plaintiff has already attempted to have the union press his grievance. Employment contracts, while made for the benefit of the employees and while conferring rights upon the employees, establish the union and not the employee as the party who can institute the contract grievance procedure. Moreover, the union's power is discretionary. Sound reasons may dictate a union's refusal to press an individual grievance. It is the union's refusal in this case which brings us to the issue which Maddox left unresolved.

 We are not without indications of the proper disposition of this case, both from the Supreme Court, lower federal courts, and an examination of the structure of federal labor law. The statutory law itself points to three possible remedies an aggrieved employee can seek to utilize. First, he may attempt to compel his employer to follow the contract grievance procedure under the proviso to § 9(a) of the LMRA, 29 U.S.C. § 159(a).[2] Second, he may, as Mr. Serra has done, bring an action against the employer under § 301. Alternatively, where the union, as here, has refused to set in motion the contract grievance procedure on behalf of the employee, he can bring an action against

his union for breach of the duty of fair representation. Even though the plaintiff has chosen to bring a § 301 suit, a decision on the question of whether such a course may be pursued necessitates examining the three possible remedies.

 A determination that an employee can bring a § 301 action would be at odds with the Maddox decision were it possible for an employee to bring an action under § 9(a) to force the employer to follow the contract grievance procedure. Maddox requires that there be an exhaustion of contract remedies, and thus no § 301 suit could be brought if a § 9(a) remedy was available. The courts have held, however, that § 9(a) merely gives an employee the right to present his employer with a request that the grievance procedures be instituted, but does not require that the employer grant the request. See Black Clawson Co. v. International Ass'n. of Machinists, Lodge 355, Dist. 137, 313 F.2d 179 (2 Cir. 1962). Since Mr. Serra made a demand on Pepsi and was refused, there is no need to give further consideration to § 9(a). We turn, therefore, to § 301 on which the plaintiff relies. The Supreme Court initially held that § 301 did not contain a jurisdictional grant for Federal judicial adjudication of individual employee claims of contract breaches by employers. Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510 (1955). Reversing itself in Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1963), the court held that an individual could bring a breach of contract action against his

---

2. Section 9(a) reads as follows: "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided*, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: *Provided further*, That the bargaining representative has been given opportunity to be present at such adjustment."

employer under § 301. In interpreting the language of § 301 the court observed that:

> The word "between," it [the respondent] suggests, refers to "suits," not "contracts," and therefore only suits between unions and employers are within the purview of § 301. According to this view, suits by employees for breach of a collective bargaining contract would not arise under § 301 and would be governed by state law, if not preempted by Garmon, as this one would be, whereas a suit by a union for the same breach of the same contract would be a § 301 suit ruled by federal law. Neither the language and structure of § 301 nor its legislative history requires or persuasively supports this restrictive interpretation, which would frustrate rather than serve the congressional policy expressed in that section.

Union News Co. v. Hildreth, 295 F.2d 658 (6 Cir. 1961), and Hildreth v. Union News Co., 315 F.2d 548 (6 Cir. 1963), relied on by the defendant involves the following fact situation. The employer and union entered into an agreement whereby five lunch counter employees would be laid off in an attempt to discover whether they were, either by theft or mismanagement, responsible for costs in excess of normal costs at the employer's similar establishments. At the end of the two week suspension the costs had, in fact, dropped and, in accordance with the employer-union agreement, the five employees were dismissed. One of the employees, Gladys Hildreth, then brought a breach of contract action against the employer. After a verdict for the plaintiff in the district court, the employer appealed. On appeal, the Sixth Circuit held that the union and the employer had the power mutually to conclude that the circumstances provided the employer with "just cause" for firing the employees. Because no motion for a

judgment notwithstanding the verdict had been made in the district court, the Court of Appeals remanded the case for a new trial.

The second trial resulted in a directed verdict for the defendant. After the appellate decision, however, Smith v. Evening News was decided by the Supreme Court. As a result of that decision, plaintiff took a second appeal arguing that Smith required a different result from the court's prior decision. Responding to this contention the Sixth Circuit stated:

> The change in the law resulting from the ruling in Smith v. Evening News Association, supra, in our opinion, does not affect our previous ruling. In making our ruling, we expressly stated (295 F.2d at p. 665) that we did not rely upon authorities which have held that under such a contract as here involved, only the Union can process a grievance and if a Union refuses or neglects to do so, an aggrieved employee is without remedy against his employer. *The right of an individual employee to process an alleged grievance is not the issue in this case.* Rather, it is whether, under the circumstances here involved, the Union had the authority, acting in the collective interest of those whom it represented, to agree with the defendant on necessary corrective measures to be taken without such action being treated as a breach of the collective bargaining agreement. As stated above, we held such authority existed and was properly exercised. (emphasis added)

We conclude, therefore, that reliance by Pepsi on the Hildreth case is not supported by the actual opinion of the Sixth Circuit. In fact, as is apparent from the foregoing, the court specifically declined the exact argument advanced by Pepsi in this case.[3] It should be noted

---

3. Another case arose out of the same union-management agreement. In Simmons v. Union News Co., 341 F.2d 531

(1965), the Sixth Circuit reached the same result as it had in Hildreth. Certiorari was denied, 382 U.S. 884, 86 S.Ct.

in passing that there is no evidence before the court at this time as to the reasons why the union here declined to press the grievance. Accordingly, it may be that ultimately the case will fall within the ambit of Hildreth, but it does not at the present time.

Humphrey v. Moore, supra, cited by the Supreme Court in the Maddox opinion, supports the conclusion that individual contract actions are within the scope of § 301. While initially concluding that the complaint was cognizable under § 301, the court ultimately reached a decision not unlike that in Hildreth and held that the union and the employer had the power under a clause in the contract to agree to the dovetailing of seniority lists where there was an absorption by the employer of a former competitor. Thus the employee had standing to maintain his suit under § 301, but the court concluded that there was no substantive basis for the plaintiff's position.

The Miranda Oil case, supra, also cited by the court, points out a possible method of adjudicating the claims of employees when the union refuses to press the employer for the implementation of the grievance procedure. Here the NLRB took the novel position of declaring that a breach of the duty of fair representation was an unfair labor practice. The employee thus would be able to bring both the union and the employer into one complaint before the Board. The Second Circuit, however, refused to enforce the Board's position.

We have not yet considered the third alternative, the suit against the union for breach of the duty of fair representation. Little need be said of that remedy in this case, for where the employee seeks reinstatement (as well as

damages) the union is unable to provide him with the more important remedy he seeks, reinstatement. A successful suit against the union will only result in an award of damages.

Section 301, therefore, seems to be the one suitable method by which an employee who seeks reinstatement and damages and whose union refuses to press his grievance, can seek to vindicate contract rights which he claims have been violated.

The defendant has also moved to dismiss on the ground that the plaintiff has failed to join an indispensible party, his union. The conclusion we have reached that the purview of § 301 includes suits by individual employees against employers requires the further conclusion that under these circumstances it obviously is unnecessary to have the union joined. An appropriate order will be entered denying defendant's motion.

---

165, 15 L.Ed.2d 125 (1965), wherein Mr. Justice Black, joined by The Chief Justice, dissented. In the course of the dissent he indicated his fear that in reality the court was precluding individual employees from bringing § 301 contract actions. He referred to Maddox, where he had also dissented, and the Sixth Circuit's opinion in Hildreth as support for his feeling that people will believe "that this Court is now approving such a forfeiture of contractual claims of individual employees." As we have pointed out, however, the language of Maddox and Hildreth specifically refute this conclusion.