Fred NORMAN, Appellant,

v.

UNITED STATES of America,
Appellee.

James N. WASHINGTON, Appellant,

v.

UNITED STATES of America,
Appellee.

Leonard R. O'BERY, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 20243–20245.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 17, 1967.

Decided May 9, 1967.

Petitions for Rehearing En Banc in
Nos. 20243 and 20245 Denied
June 14, 1967.

Petition for Rehearing before the
Division in No. 20245 Denied
June 14, 1967.

Mr. Milton A. Kallis, Washington, D.
C. (appointed by this court), for appellant in No. 20243.

Mr. Donald J. Caulfield, Washington,
D. C. (appointed by this court), for appellant in No. 20244.

Mr. Michael Joseph, Washington, D. C.,
with whom Mr. J. Alton Boyer, Washington, D. C. (both appointed by this court),
was on the brief, for appellant in No.
20245.

Mr. Edward T. Miller, Asst. U. S. Atty.,
with whom Messrs. David G. Bress, U. S.
Atty., Frank Q. Nebeker and William H.
Collins, Jr., Asst. U. S. Attys., were on the
brief, for appellee. Miss Carol Garfiel,
Asst. U. S. Atty., also entered an appearance for appellee in No. 20243. Mr.
Charles A. Mays, Asst. U. S. Atty., also
entered an appearance for appellee in No.
20245.

Before PRETTYMAN, Senior Circuit
Judge, and DANAHER and LEVENTHAL,
Circuit Judges.

DANAHER, Circuit Judge:

These appellants were charged as principals with housebreaking and grand larceny, and after a four-day trial the jury brought in a guilty verdict. We deem it unnecessary to detail specifically the numerous allegations of error. Our careful examination of the entire record has satisfied us that the convictions were just, based upon adequate evidence, and free of error involving substantial rights.

About 2 P.M. on December 8, 1965, a Chevrolet car owned by the appellant Norman ran through a stop sign about two blocks from 4605 North Capitol Street[1] in the District of Columbia. Two uniformed police officers in a marked police scout car drew up, practically alongside of the Norman car and sounded the police siren. Driving the Chevrolet was O'Bery. Also in the front seat were Norman in the center and Washington on the right. The three men turned and looked at the officers, but instead of bringing the Chevrolet to a halt, the driver accelerated its speed, traveling at times up to 70 miles per hour, with the police car in close pursuit.

After covering approximately 7 city blocks, the Chevrolet turned abruptly at a driveway, failed to negotiate the corner and collided with a tree. O'Bery and Washington jumped out and fled only to be picked up and brought back to the car within some five minutes. The pursuing officers apprehended Norman as he appeared to be trying to get out of the practically demolished Chevrolet.

On the back seat of that car was a hi fi set. In the trunk but with the trunk door raised was a television set. Also plainly visible in the back seat of the car were hi fi records some of which had fallen to the ground behind the Chevrolet. Utilizing the name and address found on the envelope containing a record which was on the ground, the officers communicated with Johnson who verified the fact that his house had unlawfully been entered and who identified the furniture and the records as his property.

█ The facts thus summarized all but exactly parallel those noted in Hiet v. United States, 125 U.S.App.D.C. 338, 372 F.2d 911 (1967). There was no unreasonable search, if indeed, we were to assume that police perceiving the articles in plain sight can be said to have made a search. And by any standard, there was nothing unreasonable about the police conduct.[2]

█ And certainly there can be no question as to probable cause for the arrest of the appellants, for as we made clear in Dixon v. United States, 111 U.S. App.D.C. 305, 296 F.2d 427 (1961), the totality of circumstances gave rise to the steps taken by the officers. That their prudent actions were correct and lawful[3] appear to us to be beyond peradventure.

O'Bery did not testify but his counsel asked the jury to accept the testimony of appellant Norman that the latter did not know O'Bery and Washington. Rather, Norman said, although he was in the car at all pertinent times, he had rented out use of his car to two men known to him only as John and Pete— not O'Bery and Washington; he had no agreement as to what amount or when

1. That was the address of one Johnson whose home had been broken into as it developed, and from which had been removed an RCA stereo hi fi console (for which Johnson had paid $299 in 1961) and a Sylvania television console model (for which he had paid $229 in 1963). Missing also were several record albums and loose records on each of which Johnson's name and address had been impressed.

2. Hiet v. United States, *supra;* Price v. United States, 121 U.S.App.D.C. 62, 348 F.2d 68, cert. denied, 382 U.S. 888, 86 S.Ct. 170, 15 L.Ed.2d 125 (1965); cf. Goodwin v. United States, 121 U.S.App. D.C. 9, 11, 347 F.2d 793, 795, cert. denied, 382 U.S. 920, 86 S.Ct. 298, 15 L.Ed.2d 234 (1965).

3. Cf. Robinson v. United States, 109 U.S. App.D.C. 22, 283 F.2d 508, cert. denied, 364 U.S. 919, 81 S.Ct. 282, 5 L.Ed.2d 259 (1960); Bell v. United States, 102 U.S. App.D.C. 383, 254 F.2d 82, cert. denied, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958).

he was to be paid by the strangers whom he had occasionally seen in a restaurant; he had assisted "John" and "Pete" in loading the furniture into the car, he had held the car door open for them as the two men placed the stereo onto the back seat; he had no knowledge as to where the furniture was to be taken; it had been picked up while he remained with the car near an alley adjacent to the Johnson residence; when with the car in flight he heard the police siren, he suspected that there might be "something wrong" about the furniture in his car. Asked what he then did, he said he reached to turn off the ignition in the speeding vehicle only to be prevented from doing so when one of the co-riders held his hand. After the collision, John and Pete ran away; he never saw them again and made no search for them as he heard they had left town.

That the jury might well have thought Norman's testimony to be inherently incredible is apparent from our reading of the transcript, and it certainly afforded scant comfort to O'Bery, the driver of the car. The officers identified both O'Bery and Washington as Norman's companions throughout the period of their observation of events.

Washington did not take the stand; rather, he chose to argue through counsel that this must have been a case of mistaken identity so far as he was concerned.

 It has been contended additionally that there was inadequate proof that the stolen articles had a valuation in excess of $100, and therefore that the charge of grand larceny could not have been sustained. In our view the judge correctly ruled that a jury question was presented[4] in light of Johnson's testimony, supra note 1.

We have examined the trial transcript in every detail and deem it unnecessary further to discuss yet other contentions urged upon us, trivial if not quite frivolous in nature. There was no question whatever as to the evidence that Johnson's house had been broken into and that the articles found in Norman's car were Johnson's property.[5] The instructions covered the points developed at trial, the principles applicable to aiding and abetting, and otherwise were adequate and adapted to the issues presented. All counsel announced that they were satisfied with the charge as given.

Viewing the record as a whole we are satisfied that there was no error affecting substantial rights, and the convictions must be

Affirmed.

---

4. Norman's counsel in argument pointed out that the judge would instruct the jury as to grand and petit larceny. He added that the condition of the radio and stereo "is an element to be considered by you." The judge correctly charged the jury as to the issue concerning the value of the stolen articles. No exception was taken.

5. As to the possession of recently stolen goods, see cases cited in Hiet v. United States, text *supra*, 125 U.S.App.D.C. at 339, 372 F.2d at 912, and in Gilbert v. United States, 94 U.S.App.D.C. 321, 215 F.2d 334 (1954).