**Nilo A. BAZARTE**

v.

**UNITED TRANSPORTATION UNION, an Unincorporated Association and William Penn Lodge No. 319, an Unincorporated Association Affiliated with the United Transportation Union, Appellants.**

No. 18464.

United States Court of Appeals, Third Circuit.

Argued June 4, 1970.

Decided Aug. 17, 1970.

---

L. Carter Anderson, Rawle & Henderson, Philadelphia, Pa., for appellants.

Robert M. Abramson, Solo, Abrams, Bergman, Trommer & Padova, Philadelphia, Pa., for appellee.

Before FREEDMAN, VAN DUSEN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

The primary question which this case presents is whether there was sufficient evidence to justify a jury's finding that the defendant union failed in its duty of fair representation in prosecuting plaintiff's grievance against his discharge by his employer.

Plaintiff was employed as a railroad fireman by the Baltimore and Ohio Railroad Company on a shift from 3:15 p. m. to 11:15 p. m., subject to being required for overtime work. In violation of company Rule O which forbids an employee from engaging "in other business without permission from the proper au-

thority," plaintiff held another job with the Upper Merion and Plymouth Railroad Company, for which he worked on a midnight to 8 a. m. shift.

On March 16, 1964, plaintiff was a member of the crew of a B & O yard shifter engine working in the South Philadelphia yard.[1] At about 10:45 p. m., while the engine was stopped and the crew were standing by awaiting further orders, plaintiff complained of illness and obtained permission of the engineer to leave the engine to go to the men's room. When plaintiff returned 10 minutes later the engine had moved. He made no inquiry, however, regarding its whereabouts in the yard, and after 30 minutes left and went at once to his job with the Upper Merion and Plymouth Railroad Company. His departure was without the permission of his superior, the yardmaster, which was required by another provision of Rule O that no employee be "absent from duty　＊　＊　＊ without permission from the proper authority." Next day plaintiff learned that the crew to which he belonged had been required to work overtime until 12:30 a. m.

There was evident ground for the belief that plaintiff's claim of illness was fictitious and that his real reason for leaving the engine was to get to his other job in time. In any event, the B & O instituted a hearing to investigate his absence from the engine and his premature departure from work without permission. Plaintiff belonged to William Penn Lodge No. 319, an affiliate of the United Transportation Union,[2] which was the collective bargaining agent for the unit in which he was employed. He asked Sylvester C. Smith, chairman of the local's grievance committee, to represent him at the hearing. Smith agreed to so do, arranged for a postponement of the hearing because of his inability to attend it, and appeared on plaintiff's behalf at the postponed hearing on March 26, 1964. There Smith objected to the proceedings on the ground that plaintiff had not received adequate notice of the charges or sufficient time to produce witnesses on his behalf, as required by the collective bargaining agreement. The company produced evidence that he had been absent from the engine from 10:55 p. m. to 12:30 a. m. and had left the yard without the required permission. Plaintiff maintained that his absence was the result of his temporary illness and his subsequent inability to see where the engine had gone. On April 10, 1964, plaintiff was found guilty of violating Rule O and was discharged by the company.

A few days after his discharge plaintiff requested Smith and R. E. Youngberg, his assistant, to help him, and from time to time inquired about his case and was told that the grievance committee was working on it. Smith in fact discussed the case with the company's hearing officer who told him that plaintiff had been discharged for two violations of Rule O, leaving the job without permission and holding another job without permission. The hearing officer told Smith that the company had proof of plaintiff's employment with the Upper Merion and Plymouth Railroad Company and that he had reported there for work at midnight on March 16 despite his claim of illness at the B & O yard. Smith also discussed the case with his own superior, Jacob M. Luttman, the chairman of the general grievance committee of the International Union. Luttman expressed the opinion to Smith that there was no chance of securing plaintiff's reinstatement and that it would be useless to prosecute the grievance any further. Smith apparently accepted this advice and did not appeal plaintiff's discharge to the company's divisional superintendent as might have been done under the collective bargaining agreement.

---

1. The yard shifter engine helped assemble other trains and therefore never left the yard.

2. Then known as the Brotherhood of Locomotive Firemen and Enginemen.

In August 1964, having received no word from Smith, plaintiff retained an attorney, Thomas Beagan, who wrote to Smith requesting a copy of the collective bargaining agreement rules and asking for any other assistance that Smith could give him. Smith did not reply. He concluded that since plaintiff had retained private counsel the union no longer was expected to act on his behalf,[3] although he never told this to plaintiff. As far as the record shows, Beagan did nothing further on plaintiff's behalf in processing his grievance.

Late in 1964 plaintiff obtained a union questionnaire addressed to railroad employees who had been discharged pursuant to an arbitration award which had abolished the job category to which plaintiff had belonged. Under this award if plaintiff had been in the company's employ on May 7, 1964, he would have been entitled to severance benefits of $6,872.56, even if he had later been discharged for any reason. Plaintiff filled out the questionnaire, which inquired whether full severance benefits had been received, and on the back of it wrote to the international president of the union asking for help in processing his grievance. He received no reply to this request nor did he hear further from Smith or anyone else acting for the union regarding his grievance.

In February 1966, plaintiff brought this action against the United Transportation Union and its local, William Penn Lodge No. 319. At the trial the jury found that the defendants had breached their duty to fairly represent plaintiff in his grievance against the company, and since the parties had stipulated that his damages consisted of the severance benefits of $6,872.56, the court directed a verdict in that amount. Subsequent motions for a new trial and judgment n. o. v. were refused,[4] and defendants appeal.[5]

■ The fiduciary duty of fair representation in the negotiation, administration and enforcement of collective bargaining agreements has been imposed upon unions by federal law as an obligation correlative to the right of a union to represent all the employees in a bargaining unit as their exclusive bargaining agent despite the contrary wishes of a minority.[6] The duty originated in cases under the Railway Labor Act in which railroad unions were charged with racial discrimination.[7] It has since been expanded as a principle of general application to collective bargaining representatives, who are required to "serve the interest of all members without hostility or discrimination toward any, to exercise [their] discretion with complete good faith and honesty, and to avoid arbitrary conduct."[8]

3. The collective bargaining agreement provides that an employee also may process his grievance himself or choose his own representative to do so.

4. The opinion of the district court is reported at 305 F.Supp. 443 (E.D.Pa.1969).

5. By error the verdict and judgment were entered only against United Transportation Union, one of the defendants. The parties have corrected this error by stipulation and an appropriate amended judgment has been entered in the district court against both United Transportation Union and William Penn Lodge No. 319.

6. See Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Humphrey v. Moore, 375 U.S. 335, 342, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Ford Motor Co. v. Huffman, 345 U.S. 330,

337, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); Brady v. Trans World Airlines, Inc., 401 F.2d 87, 94 (3 Cir.1968), cert. denied 393 U.S. 1048, 89 S.Ct. 681, 21 L.Ed.2d 691 (1969); Gainey v. Brotherhood of Ry. & Steamship Clerks, etc., 313 F.2d 318, 322–323 (3 Cir. 1963). See generally, Lewis, Fair Representation in Grievance Administration: Vaca v. Sipes, 1967 Sup.Ct. Rev. 81, 99 et seq.

7. See Tunstall v. Brotherhood of Locomotive Firemen, etc., 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944); Steele v. Louisville & Nashville R. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944).

8. Vaca v. Sipes, 386 U.S. 171, 177, 87 S. Ct. 903, 909 (1967). See cases cited supra, n. 6.

This doctrine, however, does not confer on an employee an absolute right to force his collective bargaining agent to press his complaint all the way to the very end of the grievance procedures made possible by the collective bargaining agreement.[9] The union has an obligation in exercising its power as bargaining agent to act fairly under the collective bargaining agreement and not to assert or press grievances which it believes in good faith do not warrant such action. An employee, therefore, is subject to the union's discretionary power to settle or even to abandon a grievance, so long as it does not act arbitrarily,[10] and this is true even if it can later be demonstrated that the employee's claim was meritorious.[11] It is therefore essential to plaintiff's claim that there should have been proof of "arbitrary or bad-faith conduct on the part of the Union in processing his grievance." [12] It follows from this that proof that the union may have acted negligently or exercised poor judgment is not enough to support a claim of unfair representation.

Here the union undoubtedly sought in good faith to obtain plaintiff's reinstatement. It did not act in a perfunctory manner in doing so.[13] Its representative, Smith, obtained a continuance of the first hearing so that he could personally attend, and made various objections in the course of the proceedings which followed. He decided not to press the grievance only after he had been informed that plaintiff was not only faced with the evidence against him on the charge of absence from duty, but also with the company's knowledge of his outside employment in violation of Rule O. Smith therefore had a right to consider plaintiff's case hopeless. Nev-

ertheless, Smith still conferred with his superior from whom he received the advice that plaintiff's grievance would fail. Whether he or his superior was unwise in his judgment or negligent in arriving at his conclusion, and therefore represented him inadequately, is not the issue in the case. The test is whether the union breached its duty of fair representation by dealing with his claim in bad faith or in an arbitrary manner. The evidence falls short of meeting this test. Nor is the union's failure to inform plaintiff of its decision not to go forward with his case enough to establish unfair representation, especially since there is no showing that this prejudiced him in any way, and his retained counsel evidently did not pursue his grievance.

We hold, therefore, that the union's conduct in relation to plaintiff's grievance did not constitute a violation of its duty of fair representation.

This conclusion makes it unnecessary to consider the additional contentions of the defendants that plaintiff must have shown that he had prosecuted his grievance unsuccessfully against his employer, that plaintiff had failed to seek and exhaust his remedies within the union for its alleged unfair representation, that the charge of the court was erroneous on the issue of fair representation, that the union had withdrawn its stipulation on damages and that the wrong measure of damages was applied by the district court.

Since there is a failure of proof to support the verdict, the judgment of the district court will be vacated and the case remanded with direction to enter judgment n. o. v. in favor of the defendants.

9. See Vaca v. Sipes, 386 U.S. 171, 190–193, 87 S.Ct. 903 (1967).

10. Id. at 193, 87 S.Ct. 903.

11. Id. at 192–193, 87 S.Ct. 903.

12. Id. at 193, 87 S.Ct. at 918.

13. Cf. Id. at 191, 87 S.Ct. 903.