James E. SMITH, Plaintiff,

v.

GENERAL MOTORS CORPORATION, a Delaware Corporation, et al., Defendants.

Court of Chancery of Delaware, New Castle.

Submitted Oct. 22, 1975.

Decided Dec. 1, 1975.

David Snellenburg, II, Wilmington, for plaintiff.

Max S. Bell, Jr., of Richards, Layton & Finger, Wilmington, for defendant General Motors Corp.

Stephen B. Potter, Wilmington, and Bernard G. Link, Baltimore, Md., for defendants International Union, United Automobile, Aerospace And Agricultural Implement Workers, Local 435, and International Union, United Automobile, Aerospace And Agricultural Implement Workers of America.

BROWN, Vice Chancellor.

This is a decision after trial in a suit brought by the plaintiff, James E. Smith, seeking recovery for an alleged wrongful discharge by his former employer, General Motors Corporation. Since plaintiff charges a breach by his former employer of the collective bargaining agreement then in effect between General Motors and plaintiff's labor union, the defendant International Union, United Automobile, Aerospace and Agricultural Implement Workers (hereafter "the Union") he has been compelled to join the Union, as well as the local union (hereafter "the Local") of which he was a member at the time, as codefendants. This joinder of de-

fendants is necessitated by the decision of the United States Supreme Court in the leading case of *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) wherein it was made clear that in order for an aggrieved employee to bring such a suit against his employer in a state court under § 301 of the Labor Management Relations Act, 29 U.S.C.A. Ch. 7, he must first be able to prove that his union, as his exclusive bargaining agent, breached its duty of fair representation owed to him in the handling of his grievance under the grievance procedures established by the collective bargaining agreement. See 386 U.S. 186, 87 S.Ct. 914, 17 L.Ed.2d 855. It is also clear that although state courts have jurisdiction over such actions, federal law governs the outcome. *Vaca v. Sipes, supra*, at 386 U.S. 174, 87 S.Ct. 908, 17 L. Ed.2d 848.

Plaintiff was employed by General Motors in 1967 to work at its Boxwood Road assembly plant near Wilmington. Between April 1971 and May 1972, he was given six separate notices of termination by his employer for either being absent from work without satisfactory reason or for overstaying approved leave. In each case, however, he was reinstated after providing acceptable explanations for his absences.

In September 1972, he was authorized a leave of absence for a period of 30 days—September 17 through October 16—to attend to personal affairs dealing with the acquisition of a parcel of land in North Carolina. On October 11, plaintiff visited the office of Dr. Yanez, a Wilmington neurosurgeon, concerning severe headaches he was then experiencing. He returned to work on October 17, and as part of normal procedures stated to the plant physician that his health was as good as when he went on leave—except for some headaches.

On October 18, he again visited Dr. Yanez who diagnosed his problem as tic doloureux, a somewhat mysterious ailment described by Dr. Yanez in plaintiff's case as an affliction of a nerve on the left side of the forehead which can suddenly and unpredictably cause severe pain, sufficient at its zenith to prevent a person with assembly-line duties from performing them with safety. The cause of this malady is unknown and, due to the vacillation of its symptoms, procedures for treatment vary with the individual case. On hindsight, based on an examination of his records, Dr. Yanez did testify that as a medical probability plaintiff was disabled from work from October 11, 1972 through February 13, 1973. On the second visit on October 18, he advised plaintiff that he should not return to work because of his condition.

However, plaintiff did return to his job and worked through October 25, at which time he left word for his supervisors that he was going on sick leave and would not be in the next day. He did not work thereafter. Nor did he again see Dr. Yanez at any time through the end of November.

On October 30 plaintiff, having then missed two days of work, called his employer to report that he was going to have surgery and to request a form on which to make application for sickness and accident ("S & A") benefits. The form was mailed to him that day. He promptly had it completed and returned. Its content revealed to the General Motors personnel, however, that plaintiff had not been seen by a physician since the time he had gone on sick leave, and thus it was deemed insufficient for the purpose of entitling him to S & A benefits. This circumstance is of critical significance since it is conceded by the Local's insurance representative that under the then existing insurance agreement covering union S & A benefits, the insurer was not required to pay such benefits in the absence of certification by a physician that the claiming employee was seen and examined by the physician *after* going on sick leave. In fact, at no time from October 26 through his discharge and the course of the subsequent grievance pro-

ceedings was plaintiff again seen or examined by Dr. Yanez, his medical needs having been administered through the means of telephoned prescriptions for pain relieving medication.

By November 2, plaintiff had been absent a week without having submitted anything sufficient to justify his absence as far as General Motors was concerned. By the provisions of Paragraph 64(d) of the collective bargaining agreement, an employee could be terminated by the employer

> "(d) If the employee fails to return to work within three working days after being notified to report for work, and does not give a satisfactory reason."

Accordingly, plaintiff was sent a "64(d) letter," which he received on November 4, requiring him to either return to work or provide an explanation for not doing so. He failed to return to work during the three-day period of November 6–8, and as a consequence he was discharged. And although plaintiff offered other forms signed by Dr. Yanez (including one statement which, strangely enough, was prepared by the president of the Local and signed by Dr. Yanez apparently on the mistaken assumption that his secretary had prepared it) none dispelled the problem confronting General Motor's personnel, namely, that the last time plaintiff was seen by a physician was a week before he chose to go on sick leave.

The defendant Local invoked the grievance procedures on plaintiff's behalf and also continued with its efforts to obtain S & A benefits for him. Being unsuccessful at the lower grievance steps, the matter was then referred to Alonzo Moore, representative for the defendant international Union for Step 3 of the grievance procedure. Moore was troubled by the fact that the best evidence with which he was supplied was a letter from Dr. Yanez indicating that plaintiff was unable to work as of October 18, yet management's records indicated that he had worked for a week be-

yond that date and thus that he was obviously not disabled. Despite his own belief that this was insufficient, Moore attended a regular grievance meeting with management personnel on February 2, 1973, and argued for plaintiff's reinstatement. On this particular grievance, however, management would not yield. At the urging of a representative of the Local that they might have something working in the S & A benefit section, Moore asked to have plaintiff's grievance passed until the next meeting in order to have an opportunity to obtain more supporting information. This was granted.

At the next meeting on February 7, the grievance was again brought up for action, and Moore, having received nothing new from the Local, made the decision to withdraw it. This decision was made in the presence of a designated agent for the Local, and without objection from him. Several days later, Moore received for the first time a copy of a medical report from a Dr. LeRoy, a physician who had been designated by General Motors in the interim to examine plaintiff with regard to the S & A benefits in the event that he might be reinstated thereafter. Dr. LeRoy confirmed Dr. Yanez's diagnosis of tic douloureux and suggested that if returned to work he should "not be near moving parts." Apparently, because of this and complaints and pressure brought by plaintiff, Moore thereafter attempted to reinstate the grievance, but was unable to do so. Thereafter, plaintiff instituted this suit, seeking back wages and reinstatement to his previous employment position.

■ Under the federal precedents which apply to a case of this nature, it is clear that the first question to be answered is whether the plaintiff's union violated its statutory duty to fairly represent him. If it did not, then it is unnecessary to reach the merits of the employer's action in discharging him, even if it was wrongful. The standard for testing the fulfillment of this duty is stated as follows in *Vaca v.*

*Sipes, supra,* at 386 U.S. 190, 87 S.Ct. 916, 17 L.Ed.2d 857:

> "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."

There must be "substantial evidence of fraud, deceitful action or dishonest conduct." *Humphrey v. Moore,* 375 U.S. 335, 348, 84 S.Ct. 363, 371, 11 L.Ed.2d 370, 381 (1964); *Amalgamated Ass'n. of St. E. R, & M. C. Emp. v. Lockridge,* 403 U.S. 274, 299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473, 490 (1971), reh. den. 404 U.S. 874, 92 S.Ct. 24, 30 L.Ed.2d 120.

■ Plaintiff argues that he was subjected not only to vindictive conduct by General Motors in its discharge of him during a period of medical disability, but also to an arbitrary and capricious decision on the part of the Union to abandon his grievance in the face of medical information substantiating his condition. He points to the fact that Moore made his decision without consulting plaintiff about it and thereafter avoided plaintiff's efforts to meet with him when he attempted to demand an explanation. In effect, he contends that Moore had no right to make a unilateral determination that his medical proofs were insufficient, and perhaps fraudulent, but rather that he had a duty to seek further information on his own before withdrawing the grievance. Having considered all the evidence, however, I cannot agree.

Although plaintiff denies that anyone told him that it was necessary to get proof that he had been seen by his doctor after going on sick leave in order to be entitled to S & A benefits, there is testimony from General Motors personnel that he was so informed after he made his initial application, and the insurance representative for the Local who was assisting him in his claim acknowledged that such proof was a condition to receiving medical disability benefits in all such cases. And plaintiff makes no claim of arbitrary conduct or bad faith against the Local.

By the time the matter was referred to Moore for presentation at Step 3 of the grievance procedure, plaintiff's file indicated that he had not responded to the "64(d) letter" by either returning to work or offering a satisfactory reason for his absence other than the medical reports showing that he was allegedly disabled a week before he quit. It was also clear at that point that plaintiff had been unable to qualify for S & A benefits for his claimed disability.

Despite this, Moore did make a plea for his reinstatement and, when it was apparent that he was making no headway, he bought time by having the matter passed based on the word of representatives of the Local that they might be able to come up with something. When the grievance was again brought up at the next meeting, Moore had nothing more to work with than he did at the first. Plaintiff cites no authority which would compel Moore to seek additional supporting material on his own initiative as opposed to relying on that which was provided or utilized by the Local at the lower grievance steps, and there is no evidence of any personal hostility or animosity existing between either Moore or the Union and plaintiff.

■ Moreover, the federal authorities clearly hold that in view of its purpose to act for the benefit of its overall membership in the betterment of working relations with the employer, a labor union does not owe a duty to press to the fullest each and every grievance of its individual members, but rather it has the discretion to refuse to prosecute or to abandon particular grievances so long as it does not exercise bad faith or act in an arbitrary or discriminatory manner in so doing. *Ostrofsky v. United Steelworkers of America, A.F.L.-C.I.O.,* 273 F.2d 614 (4th Cir. 1960), cert. den., 363 U.S. 849, 4 L.Ed.2d 1732, 80 S.Ct.

1628 (1960); *Simmons v. Union News Company*, 341 F.2d 531 (6th Cir. 1965), cert. den. 382 U.S. 884, 15 L.Ed.2d 125, 86 S.Ct. 165 (1965); *Encina v. Tony Lama Boot Company*, 448 F.2d 1264 (5th Cir. 1971; *Bazarte v. United Transportation Union*, 429 F.2d 868 (3rd Cir. 1970). In *Bazarte* the court further stated as follows at 429 F.2d 872:

"Whether [the union representative] was unwise in his judgment or negligent in arriving at his conclusion, and therefore represented [the employee] inadequately, is not the issue in the case. The test is whether the union breached it duty of fair representation by dealing with his claim in bad faith or in an arbitrary manner."

■ On the facts of this case, I cannot conclude that Moore, as representative of plaintiff's international union, acted arbitrarily or with discrimination or bad faith in withdrawing plaintiff's grievance so as to allow his discharge by General Motors to stand.

■ In view of this finding it is unnecessary to consider whether or not plaintiff's claim against General Motors for wrongful discharge is meritorious. In the absence of a violation by his collective bargaining representative of its duty of fair representation, he is barred from seeking recovery against his employer even though the evidence might show that he was, in fact, unable to work for medical reasons at the time of his discharge. *Vaca v. Sipes, supra, Bazarte v. United Transportation Union, supra.*

Judgment is granted in favor of the defendants. Order on notice.