Kay S. McREYNOLDS, Plaintiff,

v.

GENERAL ELECTRIC COMPANY
et al., Defendants.

Civ. No. 8590.

United States District Court,
S. D. Ohio, W. D.

Jan. 20, 1976.

Leo J. Breslin, Cincinnati, Ohio, for plaintiff.

J. Mack Swigert, Bernard C. Fox, Cincinnati, Ohio, Edwin G. Fabre, Detroit, Mich., for defendants.

ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court upon the motions of all parties for summary judgment pursuant to Rule 56, Fed.R. Civ.P. The parties have submitted memoranda, exhibits, and affidavits in support of their respective positions.

I

FINDINGS OF FACT

1. The plaintiff, Kay S. McReynolds, brings this action pursuant to 42 U.S.C. § 2000e et seq. (Title VII of the Civil Rights Act of 1964), 29 U.S.C. § 159(a) (Section 9(a) of the National Labor Rela-

tions Act) and 29 U.S.C.A. § 185(a) (Section 301(a) of the Labor Management Relations Act). Plaintiff seeks money damages against the defendants, back pay, loss of benefits, punitive damages, costs, and attorneys' fees.

2. Plaintiff was initially employed by defendant General Electric on or about September 15, 1952, as an Inspector, at a pay rate of R–10. Through various promotions she had reached, by June, 1966, the position of Inspector, Sample Lay-Out at a pay rate of R–21.

3. In late 1966 General Electric began to reduce forces in the Development-Airfoil area. Such reduction in force eliminated the inspector positions held by plaintiff and two other female inspectors (A. Heflin and A. Henize).

On December 19, 1966, plaintiff's job was eliminated, and she and the two other female inspectors were transferred to the position of Inspector, Diversified, at a pay rate of R–19. This was the next lower paid job for which they were eligible. Such transfer was in fact a downgrade.

4. At the time of plaintiff's downgrading there were Inspector, Sample Lay-Out (R–21) positions occupied by males with less seniority than plaintiff.

5. Article XIII of the applicable Collective Bargaining Agreement[1] provided that "[i]n all cases of layoff or transfer due to lack of work, exclusive of upgrading, seniority shall be the major factor governing such layoffs or transfers.

6. The Inspector Sample Lay-Out (R–21) positions occupied by males with less seniority than plaintiff required the repeated lifting of items weighing more than twenty-five (25) pounds. At that time Ohio Revised Code § 4107.43 prohibited the employment of females in capacities "requiring frequent or repeated lifting of weights over twenty-five

1. Collective Bargaining Agreement between General Electric Company at Evendale, Ohio, and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local # 647, A.F.L.–C.I.O., 1960–1969.

pounds."[2] Article XX of the Agreement provided as follows:

Nothing contained in this Agreement shall be deemed to impose upon either party the obligation to take any action, or refrain from taking any action, in violation of any existing or future law, or rule, regulations or directive issued by a government department or agency.

7. Two distinct rights were conferred upon a downgraded employee by the Collective Bargaining Agreement. One was a right to displace ("bump"), Article XIII. The other was a right of recall, Article XV.

At the time of downgrading, an employee may bump other employees with less seniority in positions for which such employee was eligible. If no such position existed, the "bump" rights terminated and the employee was then downgraded. The downgraded employee retained "recall" rights but no right to "bump up."

It was this situation which confronted plaintiff. At the time of force reduction there were no R–21 positions for which she was eligible. Accordingly, she was downgraded to R–19 with a priority claim to recall to R–21 positions for which she was eligible.

8. Plaintiff and the two other females thereupon filed grievances concerning the downgrading and the inability to bump less senior males. Such grievances were consolidated into one for disposition. While the grievances were in process, General Electric determined that an additional Sample Lay-Out Inspector (R–21) was needed for work not requiring the lifting of more than twenty-five pounds. The position was offered in order of seniority to Ms. Heflin, plaintiff, and Ms. Henize. Both Ms. Heflin and plaintiff refused. Ms. Henize accepted and withdrew her grievance. The remaining grievances were settled in March, 1968, by the Union and the Company. In the settlement General Electric agreed to set aside one Inspector, Sample Lay-Out job (R–21) and such job was offered to and accepted by Ms. Heflin, all in compliance with the Ohio female protective laws.

9. Subsequent to such settlement, plaintiff did not pursue any further internal union remedies. She terminated her employment with General Electric on April 20, 1970, and filed a sex-discrimination charge with the Equal Employment Opportunity Commission (E.E.O.C.) on the same date. On July 17, 1972, plaintiff received a Right to Sue letter from the E.E.O.C. and she filed this lawsuit on October 12, 1972.

## II

## PLAINTIFF'S CAUSE OF ACTION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

Title VII of the Civil Rights Act of 1964, in effect on April 20, 1970, the date of filing with the E.E.O.C., stated in material part:

A charge under subsection (a) [of this section] shall be filed [with the EEOC] within ninety days after the alleged unlawful employment practice occurred . . . .

42 U.S.C. § 2000e–5(d)[3] (1970)

█ Since the downgrading occurred December 19, 1966, a lack of timely filing deprives this court of jurisdiction. *Alexander v. Gardner-Denver Co.,* 415

---

**2.** The prohibition is set forth in O.R.C. § 4107.-43. Such provision is still effective; however, it is no longer enforceable to the extent that it is inconsistent with Title VII.

The enforcement of R.C. 4107.42, 4107.43, 4107.46(A), 4107.46(B) and 4107.46(E), against an employer engaged in industry affecting interstate commerce who employs 25 or more employees for each working day in each of 20 or more calendar weeks, is inconsistent with the principle of nondiscrimina-tion set forth in Title VII of the Civil Rights Act of 1964, and those sections are, therefore, preempted by virtue of the Supremacy Clause in paragraph two of Article VI of the United States Constitution. *Jones Metal Products Co. v. Walker* (1972), 29 Ohio St.2d 173, 281 N.E.2d 1.

**3.** These limitations periods are now set forth at 42 U.S.C. § 2000e–5(e).

U.S. 36, p. 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1973); *Moore v. Sunbeam Corp.,* 459 F.2d 811 (7th Cir. 1972); *Malone v. North American Rockwell Corp.,* 457 F.2d 779 (9th Cir. 1972); *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir. 1970).

Plaintiff urges two bases for avoiding this result. One: the filing of a grievance within ninety days tolls the statute, and two: the alleged employment discrimination is a "continuing" discrimination.

■ Whatever merit plaintiff's first contention may have had when this action was commenced, it is no longer viable in view of *Guy v. Robbins & Meyers, Inc.,* 525 F.2d 124 (6th Cir. 1975). The law in this circuit now holds that the filing of a grievance does not toll the statute.

■ Plaintiff's second contention must likewise fail, as alleging that defendants' acts constitute "continuing" discrimination does not necessarily make it so. *Jennings v. Illinois Central Railroad Co.,* 3 E.P.D. ¶ 8275 (6th Cir. 1971), aff'g and adopting opinion below, 3 E.P.D. ¶ 8012 (M.D.Tenn.1970) per Brown, Ch. J. At some point in time the plaintiff's claim must become "so crystalized"[4] as to begin the running of the statutory time period. We agree with Judge Merhige in *Younger v. Glamorgan Pipe and Foundry Co.,* 310 F.Supp. 195 (W.D.Va. 1969), who disposed of a similar issue as follows:

> While the question is novel, the Court finds that plaintiff's analogy is somewhat strained. The discrimination, if present, may well be continuous, and it may well have caused the transfer complained of. The Court finds, however, that *once the transfer is made, regardless of what precipitated same, it becomes final,* and it appears to the Court that the dictates of

2000e–5(d) require that an aggrieved party file his complaint as to that particular incident with the EEOC within ninety days after the alleged unlawful practice. The plaintiff, therefore, cannot be heard before this Court at this late date as to the question of the wrongdoing (emphasis added). 310 F.Supp. 195, at 197.

See also: *Guerra v. Manchester Terminal Corp.,* 350 F.Supp. 529 (S.D.Tex. 1972); *Hutchings v. U. S. Industries, Inc.,* 309 F.Supp. 691 (E.D.Tex.1969); *Givler v. Chesapeake & Potomac Telephone Co.,* 5 E.P.D. ¶ 7969 (E.D.Va. 1972).

We hold, therefore, that the date at which the plaintiff's claim was "so crystallized," was the date of the alleged discriminatory downgrading, December 19, 1966. Plaintiff's failure to file with the E.E.O.C. within ninety days of that date precludes this Court's jurisdiction as a matter of law.

### III

### PLAINTIFF'S CAUSE OF ACTION UNDER SECTION 301 OF THE LABOR MANAGEMENT ACT

The plaintiff's second cause of action is based upon Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185. This claim is premised upon the collective bargaining agreement referred to hereinbefore.

■ Plaintiff relies upon Article XV which requires seniority to be the major factor governing recall of those employees who have been downgraded due to a reduction in force. Article XV does not exist in a vacuum; it must be read together with Article XX (see page 1280) which insulates both parties against illegal action. It is clear that in 1966 action such as the plaintiff urges would have violated the Ohio Female Protective Laws, R.C. 4107.43 et seq.[5]

---

4. *Jennings v. Illinois Central Railroad Co.,* supra, at p. 6024.

5. The reassumption of Ms. Henize and Ms. Heflin of R–21 positions is not inconsistent with

the foregoing. Ms. Henize accepted an R–21 position, after plaintiff did not, that excluded lifting and the grievance settlement created R–21 work that did not conflict with such laws. See Findings of Fact No. 8.

While this is not an absolute defense to plaintiff's position, *Ash v. Hobart Mfg. Co.,* 483 F.2d 289 (6th Cir. 1973), evidence of good faith reliance upon such statutes is relevant, *Ash v. Hobart Mfg. Co., supra,* at 292.

A careful examination of all memoranda, exhibits and other documents submitted in this case discloses no evidence of a lack of good faith on the part of defendant General Electric Company. We hold that such defendant acted in good faith in relying on the then operative Ohio female protective law. Accordingly, the actions taken pursuant thereto did not violate Section 301(a) of the Labor Management Relations Act or the terms of the collective bargaining agreement in effect when such actions took place.

IV

PLAINTIFF'S CAUSE OF ACTION UNDER SECTION 9(a) OF THE NATIONAL LABOR RELATIONS ACT

The plaintiff's third cause of action concerns the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (hereinafter referred to as the "Union"), Local # 647. It is based upon alleged violations of Section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a).

Plaintiff charges first that the Union acted arbitrarily and capriciously in its settlement of the grievance, since one of the females was returned to R–21 status while plaintiff remained at R–19.

The standards by which a union's conduct must be gauged have been clearly set forth by the United States Court of Appeals for the Sixth Circuit, as follows:

In *Balowski v. International Union UAW,* Circuit Judge Phillips, now Chief Judge, who wrote the opinion for the court, stated:

"An action will not lie against a union for failure to process a grievance absent a showing of fraud, misrepresentation, bad faith, dishonesty of purpose or such gross mistake or in-

action as to imply bad faith. *Williams v. Kroger Co.,* 369 F.2d 85 (C.A. 6), (1966). * * *" 372 F.2d 829, 834 (6th Cir. 1967).

In *Ford Motor Co. v. Huffman,* the Court stated:

"Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953).

See also *Humphrey v. Moore, supra* [375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370]; *Simmons v. Union News Co.,* 341 F.2d 531 (6th Cir.), *cert. denied,* 382 U.S. 884, 86 S.Ct. 165, 15 L.Ed.2d 125 (1965); *Hildreth v. Union News Co.,* 315 F.2d 548 (6th Cir.), *cert. denied,* 375 U.S. 826, 84 S.Ct. 69, 11 L.Ed.2d 59 (1963); *Union News Co. v. Hildreth,* 295 F.2d 658 (6th Cir. 1961).

An employee does not have an absolute right to require his bargaining representative to—" * * * press his complaint all the way to the very end of the grievance procedures made possible by the collective bargaining agreement. * * * It follows from this that proof that the union may have acted negligently or exercised poor judgment is not enough to support a claim of unfair representation." *Bazarte v. United Transp. Union,* 429 F.2d 868, 872 (3rd Cir. 1970).

*Dill v. Greyhound Corporation,* 435 F.2d 231, 238 (6th Cir. 1970).

From a careful review of all of the memoranda, exhibits, affidavits and

other documents, the Court fails to find any evidence of improper Union action based upon the standards set forth above.

Plaintiff next charges the Union with a failure to notify her properly of the disposition of her grievance. This Court has not been cited to any authority that would require the Union to inform a grievant of the ongoing status or settlement of a grievance. To the contrary, there is case law holding that the failure to inform does not constitute unfair representation.

> Nor is the union's failure to inform plaintiff of its decision not to go forward with his case enough to establish unfair representation, especially since there is no showing that this prejudiced him in any way.
>
> Bazarte v. United Transportation Union, 429 F.2d 868, 872 (3d Cir. 1970).

■ Even assuming arguendo that the Union had a duty to inform plaintiff of the settlement of her grievance, a failure to do so would not have prejudiced plaintiff's rights in this lawsuit.

The necessity of filing with the E.E.O.C. by March 19, 1967, has been previously discussed (see Section II, Plaintiff's Cause of Action under Title VII of the Civil Rights Act of 1964). A grievance settlement in March of 1968 has no relevance to a right that ended a year previously.

## V

### CONCLUSIONS OF LAW

#### A.

The filing of a grievance under collective bargaining agreement in 1967 alleging a discriminatory downgrading did not toll the statute of limitations requiring filing with the EEOC within ninety (90) days after the alleged unlawful employment practice.

#### B.

An alleged discriminatory downgrading is not a continuous discriminatory practice, but crystallizes at the time of transfer and starts the running of the time period set forth in 42 U.S.C. § 2000e–5(e).

#### C.

A reliance in good faith upon the Ohio Female Protective Laws then in effect is a sufficient defense to an asserted violation of § 301(a) of the Labor Management Relations Act.

#### D.

A settlement of two consolidated grievances where the more senior grievant is recalled to a position previously held and the junior grievant is not, does not in and of itself constitute a breach of a union's duty of fair representation to its members, nor a violation of § 9(a) of the National Labor Relations Act.

#### E.

There being no genuine issue as to any material fact, the Court grants the motions for summary judgment of the defendants and denies the motion for summary judgment of the plaintiff.

Final judgment in this matter is hereby awarded to defendants. Each party shall bear its own costs.

Let judgment enter in accordance with the foregoing.