441 F.2d 599
 77 L.R.R.M. (BNA) 2412, 65 Lab.Cas. P 11,695
 Edmund R. STEINMAN, Plaintiff-Appellant,
v.
SPECTOR FREIGHT SYSTEM, INC., Truck Drivers Local No. 449,
affiliated with International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and Helpers of America,
International Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of America, Defendants-Appellees.
 No. 413, Docket 34969.
 United States Court of Appeals, Second Circuit.
 Argued Jan. 27, 1971 and March 22, 1971.
Decided April 23, 1971.
 
 John M. Garrity, Buffalo, N.Y., for plaintiff-appellant.
 Paul A. Crotty, Buffalo, N.Y. (McMahon & Crotty, Joseph M. Crotty, Buffalo, N.Y., on the brief), for Local 449, International Brotherhood of Teamsters.
 Francis F. Sulley, Chicago, Ill. (Vedder, Price, Kaufman & Kammholz, John P. Jacoby, Arthur B. Smith, Jr., Chicago, Ill., Flaherty & Cohen, Buffalo, N.Y., on the brief), for Spector Freight System, Inc.
 Before WATERMAN, MOORE and FEINBERG, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 Plaintiff Edmund R. Steinman appeals from an order of the United States District Court for the Western District of New York, John T. Curtin, J., which granted the motions of defendants Spector Freight System, Inc. and Truck Drivers Local No. 449[1] for summary judgment in this action under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. 185(a). Plaintiff's complaint alleged that in 1966 Spector breached its collective bargaining agreement with the Local when it discharged plaintiff, a member of the bargaining unit. The complaint also alleged that Local 449 failed to represent plaintiff properly in grievance and arbitration proceedings concerning the discharge. For reasons set forth below, we reverse and remand for further proceedings.
 
 I.
 
 2
 The case comes to us on an unusual set of facts, although plaintiff's underlying grievance is not uncommon. Steinman was employed by Spector from 1958 to 1966 as an over-the-road truck driver, whose usual driving assignment was from Buffalo, New York to Richfield, Ohio. For some time prior to his discharge, Steinman had apparently been involved in a dispute over the waiting time practices employed by Spector's dispatchers at Richfield. The precise details need not be set forth. For present purposes, it is enough to say that a construction of the collective bargaining agreement was involved and that plaintiff's view was popular with neither company nor union representatives. On September 14, 1966, Spector discharged Steinman, allegedly because he reported late for a driving assignment. Steinman claimed that the discharge was because of his refusal to addede to illegal company practices during the layover at Richfield, e.g., refusal of rest time and compensation for such time. Thereafter, plaintiff filed a written grievance claiming an illegal discharge. Following contract procedure, he was represented by Local 449. The Joint Local Area Grievance Committee, composed of three Local 449 and three Spector representatives, could not agree. In accordance with the contract, the grievance was then presented to the Joint State Grievance Committee (State Committee) through a Local 449 representative. On October 20, 1966, plaintiff's grievance was denied. The collective bargaining agreement provided that this decision was 'final.'[2]
 
 
 3
 Up to this point, the case was a typical one, except that because of his view of the contract, plaintiff was obviously a thorn in the side of all, including Local 449.[3] Under familiar law, e.g., Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); General Drivers Union v. Riss & Co., 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963), plaintiff normally would have been required to abide by the arbitration award and could not have successfully sued in a court of law for breach of contract. However, the unusual occurred. Steinman filed an unfair labor practice charge with the National Labor Relations Board, complaining that both Local 449 and Spector had violated the National Labor Relations Act. In December 1966, the Acting Regional Director dismissed both charges, and Steinman asked the Board's General Counsel to review the dismissal of the charge against the Local. In October 1967, the General Counsel sustained Steinman's appeal and the Board's Regional Director issued a complaint, alleging that Local 449 had violated section 8(b)(1)(a) of the Act by failing to represent Steinman fairly in his discharge grievance.
 
 
 4
 In December 1967, a trial examiner conducted a hearing, to which Spector was not a party. In March 1968, the examiner held that the Local had not met its obligations to Steinman under the Act. His decision stated:
 
 
 5
 By its lack of candor and by virtue of its misrepresentations of material facts, and as a result of the languid, perfunctory presentation given Steinman's grievance at the October 20 grievance meeting, Respondent deprived Edmund Steinman of his statutory right to full and fair litigation of his grievance. It did thereby violate Section 8(b)(1)(a) of the Act.
 
 
 6
 The proposed remedial order required Local 449 (1) to request the State Committee to rehear Steinman's discharge grievance; (2) to advise the State Committee that the Local was relinquishing its right to represent Steinman in any rehearing and that it was willing to allow Steinman to be represented by counsel or representative of his own choosing; and (3) to reimburse Steinman for any loss of pay he had suffered because of the Local's failure to represent him fairly.
 
 
 7
 Neither Steinman nor Local 449 appealed from the trial examiner's decision, and the Local complied with it. It paid Steinman $8,642 in back pay, and requested the State Committee to rehear Steinman's discharge grievance, as follows:
 
 
 8
 The Trial Examiner of the National Labor Relations Board has found that we failed before your Committee to fairly and vigorously prosecute the grievance of Edmund S. Steinman protesting the oral agreement governing layover time and compensation at the Richfield, Ohio Terminal of Spector Freight Systems, Inc.
 
 
 9
 We request the Joint State Grievance Committee to grant Edmund Steinman a rehearing on his grievance.
 
 The Local also wrote Steinman as follows:
 
 10
 We have requested the Joint State Grievance Committee for a re-hearing of your case of October 20, 1966.
 
 
 11
 You are hereby notified that we are waiving our contractual right to represent you at this re-hearing before the State Committee and shall permit you to select counsel or other representative of your own choosing.[4]
 
 
 12
 At a meeting in June 1968, the State Committee deadlocked on whether there should be a rehearing of plaintiff's discharge grievance.
 
 
 13
 In accordance with the contract,[5] the issue was sent to the Eastern Conference Joint Area Committee (Area Committee). By this time, plaintiff had retained his present counsel, who was advised by counsel for the Area Committee that the matter would be heard on July 23, 1968, and that:
 
 
 14
 As Counsel for the above Committee, I would suggest that you be prepared to submit your case in writing, as well as orally. You should be aware that the case is submitted on the procedural question of whether the New York State Committee should rehear the merits. Accordingly, my reaction is that my client will not consider the merits but will merely rule on the procedural issue. If the Committed were to rule to rehear the case, I imagine that the matter would then be referred back to the New York State Grievance Committee which would hear the merits.
 
 
 15
 On the specified date, plaintiff appeared with his attorney and, in effect, submitted the trial examiner's decision as his case on why he was entitled to a rehearing. Unlike the proceeding before the Board, a representative of Spector was present and participated. William J. Lemon, Spector's vice-president in charge of labor relations, argued against reopening the grievance. Relying principally upon the fact that neither Spector nor the State Committee was a party to the Board proceeding, he stated:
 
 
 16
 I question the right of the Board to even suggest that the Union request a reopening of the case. Further, I do not believe the Board has the jurisdiction over a Joint Area Committee properly constituted under the terms of the agreement. Further, it would appear that the Union has fully complied with the direction of the Examiner in requesting the rehearing so that a denial of such request cannot prejedice or subject Union to further penalties or action by the Board.
 
 
 17
 I request that this committee render a decision denying the request of the Union and reaffirm the principle that once a decision has been rendered, it is final and binding on both parties.
 
 
 18
 Apparently the Area Committee agreed because it refused the request for a rehearing. Under the contract, when the Area Committee,
 
 
 19
 by a majority vote, settles a dispute, such decision shall be final and binding on both parties with no further appeal.[6]
 
 
 20
 In October 1968, plaintiff filed this section 301 suit in the district court. Judge Curtin held that plaintiff was not entitled to relief against either Spector or Local 449, and granted defendants' motions for summary judgment. He pointed out that under Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), plaintiff could have brought a section 301 action against Spector after the trial examiner found a violation by Local 449 of its duty of fair representation. But since plaintiff instead accepted the remedy proposed by the trial examiner and 'was given full opportunity to press his grievance through the collective bargaining process,' plaintiff was bound by the decision of the Area Committee. In addition, the judge dismissed as without merit plaintiff's charge that the composition of the various grievance committees rendered the arbitration procedure basically unfair.
 
 II.
 
 21
 Plaintiff claims he was discharged without just cause because of his insistence that company practice as to layovers violated the collective bargaining agreement. At the only hearing on the merits of his discharge grievance, plaintiff was improperly represented, so that he did not receive a 'full and fair litigation of his grievance,' in the words of the Board's trial examiner. Moreover, despite his victory in the Board proceedings against the Local, plaintiff's attempt to obtain a rehearing was unsuccessful.
 
 
 22
 The district judge's analysis apparently assumed that there were two distinct arbitration proceedings. Although agreeing that during the first proceeding the Local did not adequately represent plaintiff, the judge believed that this defect was corrected when the Local, in accordance with the trial examiner's decision, requested the State Committee to grant a rehearing. Thereafter, in what was considered the second proceeding, retained counsel represented plaintiff and the Local breached no further duty of representation owed to plaintiff. On this view, the judge concluded that plaintiff freely chose the trial examiner's remedy, was given 'full opportunity' to grieve and, under Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), was therefore bound by the decision of the Area Committee.
 
 
 23
 We do not agree with this analysis, since it places undue emphasis on the form of arbitration and ignores the realities of plaintiff's plight. He has been effectively denied a fair hearing on the merits of his claim in the arbitration process and has now been similarly denied one in the federal district court. We agree that under Republic Steel-- as well as under other decisions cited to us by Spector[7] -- plaintiff could not sue if he had lost in a fair arbitration. But that has not occurred, and the case is therefore inapposite. Difendant Spector urges that the Area Committee's decision was not arbitrary or capricious and should be considered as a decision on the merits. While it is conceivable that the Area Committee reached its decision after a consideration of the merits, it is hardly probable in view of the letter from the Committee's counsel and the position taken by Spector at the hearing. Moreover, had the trial examiner found that the initial arbitration procedures were collusive or incomplete, the Area Committee's refusal to rehear the case would not prevent us from concluding that plaintiff had not received a fair hearing. We do not see why the present case should be treated differently.
 
 
 24
 Nor does Vaca v. Sipes, supra, bar plaintiff's suit. If anything, it supports his position. That case made clear, as the district court recognized, that if a collective bargaining representative is derelict in its duty to represent fairly an allegedly wrongfully discharged employee, the employee can sue for that dereliction or proceed against his employer for the latter's breach of the collective bargaining agreement. Id., 386 U.S. at 184-187, 87 S.Ct. 903. See Lewis, Fair Representation in Grievance Administration: Vaca v. Sipes, 1967 Sup.Ct.Rev. 81. The Court recognized that in such suits competing interests must be accommodated. The employee desires to control his individual grievance. The union, while wanting to protect the individual, must also consider the rights of its collective membership. Labor and management both have an interest in the preservation of the integrity of contractual remedial procedures. In Vaca, a union's decision not to take an employee's grievance to arbitration was accepted because it had not been made in bad faith. But the Court assumed that a grievant is entitled to a fair airing of his grievance on the merits somewhere-- whether by the union, through contract remedies or by a court-- something plaintiff has not yet obtained in this case. Moreover, Vaca, as well as previous decisions, favored contractual rather than judicial resolution of labor grievances and allowing plaintiff's suit will serve this policy. Indeed, affirming the district court would destroy any incentive a grievant in plaintiff's position may have to return to the arbitration procedures rather than go directly to the courts after an administrative determination that his union had inadequately represented him.
 
 
 25
 Plaintiff's complaint states a claim for unpaid layover wages allegedly due under the collective bargaining agreement for time spent at the Richfield terminal in addition to a claim for damages caused by wrongful discharge. The district court dismissed the former claim on the grounds discussed above and on the alternative ground that plaintiff had not processed a grievance for these wages. We believe, however, that plaintiff should be allowed at this point to proceed with his claim for layover wages. In a letter to the Local after his discharge and in a written grievance submitted at the local level, plaintiff complained about both his discharge and the layover procedures at Richfield. But plaintiff's Local 449 representative apparently took the position that the only issue was wrongful discharge. In view of the trial examiner's findings as to the quality of the Local 449 representation, we think that plaintiff did attempt to use the grievance procedure. Cf. Republic Steel, supra, 379 U.S. at 652-53, 85 S.Ct. 614. In any event, he should be given the opportunity to show that pressing a grievance would have been futile, due to the Local's position at the 1966 State Committee hearing that Spector and the drivers had agreed to the disputed layover procedure. Desrosiers v. American Cyanamid Co., 377 F.2d 864 (2d Cir. 1967).[8]
 
 
 26
 Accordingly, we hold that the district court erred in not allowing plaintiff's section 301 suit to proceed, and we remand for that purpose. We express no view on the merits of plaintiff's claims, and hold only that he be given the opportunity to prove them.[9] Cf. Abrams v. Carrier Corp., 434 F.2d 1234 (2d Cir. 1970), cert. denied, United Steelworkers of America v. Abrams, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (Apr. 5, 1971).
 
 
 27
 Reversed and remanded.
 
 
 
 [1]
 Local 449 is affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America
 
 
 [2]
 Where a Joint State Committee, by a majority vote, settles a dispute, no appeal may be taken. Such a decision will be final and binding on both parties
 New York State Teamsters Joint Council Freight Division Over-The-Road Motor Freight Supplement Agreement, Art. 44, 1(a) (hereinafter Supplemental Agreement).
 
 
 [3]
 There are also indications that plaintiff was caught in teh cross-fire of hostility between Local 449 and Local 375, another Teamster local of which he was a member
 
 
 [4]
 Plaintiff denies receiving this letter. In view of what transpired thereafter, the district judge regarded this as immaterial. We agree
 
 
 [5]
 See Supplemental Agreement, Art. 44, 1(e)
 
 
 [6]
 Id
 
 
 [7]
 E.g., Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363 (1964); General Drivers Union v. Riss & Co., 372 U.S. 517, 83 S.Ct. 789 (1963)
 
 
 [8]
 Plaintiff also claimed that the grievance proceedings involved here are inherently unfair because the joint employer-union committees have equal numbers of union and management representatives. We agree with the district court that this claim is without merit. The Supreme Court has approved similar procedures. Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363 (1964); General Drivers Union v. Riss & Co., 372 U.S. 517, 83 S.Ct. 789 (1963)
 
 
 [9]
 We note that we are not passing upon any other defenses to plaintiff's suit that may be raised by Spector or by Local 449, which has filed no brief in this court and has made no argument other than those advanced by Spector. Nor do we express an opinion as to what remedies might be appropriate at this stage of the litigation, if any, or, assuming plaintiff prevails, at the conclusion of trial