332 F.Supp. 375 (1971)
Roscoe DAVIDSON, Plaintiff,
v.
INTERNATIONAL UNION UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL NO. 1189, and Aluminum Company of America, a corporation and Alcoa Castings Company, a corporation organized under the Laws of the State of Delaware, Defendants.
Civ. No. 1117-69.
United States District Court, D. New Jersey.
October 7, 1971.
Ernest Gross, New Brunswick, N. J., for plaintiff.
Seymour Cohen, Hackensack, N. J., for defendant Union.
Gleeson, Hansen & Pantages, by W. Clark Gaw, Newark, N. J., for defendants Alcoa and Aluminum.

MEMORANDUM OPINION
LACEY, District Judge:
Plaintiff sues under Section 301 of the Labor Management Relations Act (29 U.S.C. § 185), charging his former employer with wrongful discharge and his union with breach of its duty of fair representation.
Trial was had herein on September 28 and 30, 1971.
The following constitutes, in opinion form, my Findings of Fact and Conclusions of Law, pursuant to F.R.Civ.P. 52(a).
Plaintiff entered the defendants' employ in 1961. At all material times he was a member of and represented by, Local 1189 U.A.W. (Union), exclusive bargaining representative for employees at the companies' plant.
In December, 1967, his company imposed upon the plaintiff, first, a disciplinary 5-day suspension, and then discharged him for what it termed good cause. The Union instituted at once the grievance procedures prescribed in the collective bargaining agreement (Ex. P-1Article IV).[1] The grievance was denied on April 3, 1968.
*376 The plaintiff then requested arbitration under the collective bargaining agreement. Article V of the agreement provides for arbitration and states in pertinent part:
The decisions and awards of the Arbitrator shall be final and binding.
The arbitration hearing occurred on January 15, 1969. The Board denied plaintiff's grievance in a decision returned on March 12, 1969.
The pre-trial order sets out plaintiff's claims: Against the Unionthat it "breached its duty of fair representation by not properly representing him during the grievance procedure and by proceeding to arbitration in a matter which raised factual questions as to plaintiff's conduct and the conduct of others without giving him the opportunity to be present." Against the company that it "breached its duty to him by discharging him arbitrarily, capriciously, discriminatorily and without proper cause." Obviously, if the arbitration decision stands, there is no basis for a claim against either defendant.
In the Steelworkers' Trilogy, the Supreme Court made it clear that, under our national labor policy, settlement of labor disputes by arbitration is favored. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). See also, Amal. Ass'n. of Street, Elec. Ry., etc. v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971), dissenting opinion of Mr. Justice White (with whom Mr. Chief Justice Burger joined); Indep. Oil Workers v. Mobil Oil Corp., 441 F.2d 651, 652 (3 Cir. 1971); Mason-Dixon Lines, Inc. v. Local Union No. 560, I.B.T., 443 F.2d 807, 809 (3 Cir. 1971); Local 616, I. U. E. R. & M. Workers v. Byrd Plastics, Inc., 428 F.2d 23, 25 (3 Cir. 1970); Northwest Airlines, Inc. v. Air Line Pilots Ass'n., 442 F.2d 251, 254 (8 Cir. 1971).
Consistent with this judicially expressed enthusiasm for arbitral resolution of labor disputes is Section 203(d) of the Labor Management Relations Act, 29 U.S.C. § 173(d):
Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. * * *
Beyond this national decisional and statutory general policy, the parties here pursued the grievance and arbitration procedures under a collective bargaining agreement which, as has been stated, provides finality for an arbitration award.
This contractual implementation and endorsement of the nation's labor policy for resolution of labor disputes has, as might be expected, been well received by our courts and the National Labor Relations Board. Thus, in Lockridge, supra, Mr. Justice White, dissenting, pointed out the extremely narrow grounds available for review of an arbitrator's award by the National Labor Relations Board, notwithstanding the preemption doctrine of San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).
Lomax v. Armstrong Cork Co., 433 F.2d 1277, 1280 (5 Cir. 1970), provides:
* * * where the grievance procedure provides that the decision is final and binding, the parties will be precluded from subsequently seeking an adjudication in the courts. * *[2]
*377 Steinman v. Spector Freight System, Inc., 441 F.2d 599, 600-601 (2 Cir. 1971), states:
* * * Under familiar law, e. g., Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); General Drivers Union v. Riss & Co., 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963), plaintiff normally would have been required to abide by the arbitration award and could not have successfully sued in a court of law for breach of contract. * * *[3]
In Boys Markets, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 242-243, 90 S.Ct. 1583, 1588, 26 L.Ed.2d 199 (1970), Mr. Justice Brennan stated:
* * * in the Steelworkers Trilogy [supra] we emphasized the importance of arbitration as an instrument of federal policy for resolving disputes between labor and management and cautioned the lower courts against usurping the functions of the arbitrator.
In Local 616, I.U.E. R. & M. Workers v. Byrd Plastics, Inc., supra, in referring to a "final and binding" arbitration clause, Circuit Judge Adams stated (428 F.2d at 26):
A clause stating that a decision of an arbitrator is "final and binding" is no doubt intended to establish a principle similar to that of res judicata, and to bar reconsideration of the disputes fully decided on the merits.[4]
It is against these legal principles that plaintiff's claim must be put. It is of course now well settled that an employee may bring a § 301 suit against his employer for wrongful discharge, irrespective of Garmon, supra. See Lockridge, supra; and for background and a scholarly analysis of an employee's rights under § 301, see Richardson v. Communication Workers of America, 443 F.2d 974 (8 Cir. 1971). See also Smith v. Evening News Ass'n., 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), allowing a § 301 suit in state court (there was no grievance arbitration procedure in the contract in suit); Steinman v. Spector Freight System, Inc., supra. Cf. Wells v. Order of Railway Conductors, 442 F.2d 1176 (7 Cir. 1971).
Suit against the employer for wrongful discharge will not lie here, however, unless the plaintiff can cause the arbitrator's decision to be overthrown, a result not easily achieved in view of the foregoing decisions.[5]
Plaintiff assails the grievance and arbitration procedure, and seeks to set the determinations thereof aside, under the *378 doctrine of fair representation duty of Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).[6]
The Vaca duty of fair representation has been discussed recently in this Circuit in Bazarte v. United Transportation Union, 429 F.2d 868 (3 Cir. 1970), where the Court stated (at 871):
The fiduciary duty of fair representation in the negotiation, administration and enforcement of collective bargaining agreements has been imposed upon unions by federal law as an obligation correlative to the right of a union to represent all the employees in a bargaining unit as their exclusive bargaining agent despite the contrary wishes of a minority.[6] The duty originated in cases under the Railway Labor Act in which railroad unions were charged with racial discrimination. It has since been expanded as a principle of general application to collective bargaining representatives, who are required to "serve the interest of all members without hostility or discrimination toward any, to exercise [their] discretion with complete good faith and honesty, and to avoid arbitrary conduct."
This doctrine, however, does not confer on an employee an absolute right to enforce his collective bargaining agent to press his complaint all the way to the very end of the grievance procedures made possible by the collective bargaining agreement. The union has an obligation in exercising its power as bargaining agent to act fairly under the collective bargaining agreement and not to assert or press grievances which it believes in good faith do not warrant such action. * * * (Footnotes omitted)
Fatal to plaintiff's claim here is our finding that there is no evidence to support a claim that the union arbitrarily, discriminatorily, or in bad faith failed to exhaust the contractual procedures, as in Vaca, or that it did anything but press plaintiff's claim fully and vigorously to the limits allowed by the collective bargaining agreement.
The grievance procedures were filed promptly, each step was taken, and then arbitration was pursued, although, as we know from Vaca and Bazarte, where the full grievance and arbitration procedures were not pursued, this may not have been required under the fair representation doctrine.
*379 Plaintiff testified that throughout the period involved he was represented by counsel who wrote numerous letters to the company. These letters were never produced. However, even plaintiff himself, at trial, did not state that he ever registered any formal complaint at the grievance procedure outcome. Quite to the contrary, instead of so doing, he pressed the union to go to arbitration, which was done, again, from the testimony, at or about the time plaintiff was represented by counsel.
Plaintiff complains that the Union representative told him not to come to the arbitration hearing. This certainly does not amount to bad faith. The record of the hearing was stipulated into evidence. It appears no testimony was taken of either company or Union witnesses. Plaintiff does not show here what he might have offered at the hearing had he been there. Certainly we know that his position, even as advanced at trial, was presented to the arbitrators by the Union.[7]
As stated in Vaca v. Sipes, supra 386 U.S. at 190, 87 S.Ct. at 916, 17 L.Ed.2d at 857: "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. * * *" The Supreme Court in Vaca, and the Court of Appeals in Bazarte, found no breach of this statutory duty where the Union had not exhausted the grievance-arbitration procedures. In the case at bar, the Union did! I find no merit to the plaintiff's unfair representation charge.[8] The Union diligently took each of the four grievance steps and *380 then pursued arbitration. There is no claim or showing of hostility on the part of any Union representative toward the plaintiff, or that he otherwise sustained or suffered arbitrary or discriminatory treatment.
I therefore find that the plaintiff has failed to carry the burden of his charges.
An appropriate form of Judgment should be submitted.
NOTES
[1] There is a 4-step grievance procedure:

(a) With the foreman or supervisor; then (b) with the department head, then (c) with the Works Manager; then (d) by an International representative meeting with senior company officials. Arbitration, "final and binding," then follows.
[2] Lomax also provides, however, that "* * * a union may not * * * process * * * [a grievance] in a perfunctory manner * * *." 433 F.2d at 1281.
[3] This case will be treated below in more detail, bearing as it does upon the fair representation duty claim.
[4] Judge Adams went on to find the earlier arbitration decision not to have been on the merits.

See Republic Steel Corp. v. Maddox, 379 U.S. 650, 653, 85 S.Ct. 614, 616, 13 L.Ed. 2d 580 (1965): "If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement * * *." Haynes v. United States Pipe and Foundry Co., 362 F.2d 414, 417-418 (5 Cir. 1966): "* * * when a dispute arises within the scope of a collective bargaining agreement, the parties are relegated to the remedies which they provided in their agreement. * * This is a run-of-the-mine case where the grievance procedure was followed and the adverse decision against appellant became final. Being dissatisfied, he sought to start anew in the face of the bar of the final decision under the grievance procedure. This he may not do under the current status of federal labor law as we understand it. * * *"
[5] Matter of Communications Equip. Workers v. Western Electric Co., Inc., 320 F.Supp. 1277, 1279 (D.Md.1970) sets forth the standards enunciated by various courts which "* * * are reluctant to overturn or set aside an arbitrator's decision." See also Miller v. Spector Freight Systems, Inc., 366 F.2d 92, 93 (1 Cir. 1966), to the effect that an employee under a collective bargaining agreement has "* * * no contractual right not to be discharged except insofar as the collective bargaining agreement gave it to him." Broniman v. Great Atlantic & Pacific Tea Co., 353 F.2d 559, 560 (6 Cir. 1965), cert. denied 384 U.S. 907, 86 S.Ct. 1343, 16 L.Ed.2d 360, Boone v. Armstrong Cork Co., 384 F.2d 285 (5 Cir. 1967).
[6] The United States Supreme Court had earlier held, in Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964) that § 301 will support, regardless of otherwise applicable preemption considerations, a suit in the state courts by a union member against his union that seeks to redress union interference with rights conferred on individual employees by the employer's promises in the collective-bargaining agreement, where it is proved that such interference constituted a breach of the duty of fair representation. See also Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1952); Brady v. Trans World Airlines, Inc., 401 F.2d 87, 94 (3 Cir. 1968), cert. denied, International Ass'n of Machinists v. Brady, 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969); Nedd v. Mine Workers, 400 F.2d 103 (3 Cir. 1968); Gainey v. Brotherhood of Ry. & Steamship Clerks, etc., 313 F.2d 318, 322-323 (3 Cir. 1963); Dill v. Greyhound Corp., 435 F.2d 231 (6 Cir. 1970), cert. denied 402 U.S. 952, 91 S.Ct. 1622, 29 L.Ed.2d 122 (1971); St. Clair v. Local Union No. 515 of Int. Bro. of Teamsters, etc., 422 F.2d 128 (6 Cir. 1969); Sweeney v. Hiltebrant, 373 F.2d 491 (6 Cir. 1967); Balowski v. Int'l. Union, U.A., A. & A. Imp. Workers, 372 F.2d 829, 834 (6 Cir. 1967); Local Union No. 12, United Rubber, C. L. & P. Wkrs. v. N.L.R.B., 368 F.2d 12 (5 Cir. 1966), cert. denied 389 U.S. 837, 88 S.Ct. 53, 19 L.Ed.2d 99 (1967); Haynes v. United States Pipe and Foundry Co., supra, note 4; Pekar v. Local Union No. 181 of Brewery Workers, 311 F.2d 628 (6 Cir. 1962), cert. denied 373 U.S. 912, 83 S.Ct. 1303, 10 L.Ed.2d 414 (1963); Thompson v. Int'l. Ass'n. of Machinists, 258 F.Supp. 235 (E.D.Va.1966). And see Lewis, Fair Representation in Grievance Administration: Vaca v. Sipes, 1967 Sup.Ct.Rev. 81, 99 et seq.; Ratner, Some Contemporary Observations on Section 301, 52 Georgetown L.J. 260, 283 (1964).
[7] This is apparent in the Findings of the aribtration. The arbitration proceedings reflect that both the company and Union presented their positions "off the record." There is nothing in the record of this trial to indicate that such a procedure was unusual, discriminatory, in bad faith, or detrimental to the plaintiff.

In specific terms, plaintiff at trial and, through the Union's submission, at arbitration, contended (a) He had not damaged company property; (b) He had not threatened a supervisory employee. These contentions were contradicted by the company and the arbitrators accepted the company's position. At trial, a former employee contradicted plaintiff as to (a), and, based on subjective factors of demeanor and manner of testifying, both as to this ex-employee and plaintiff, I accept the former employee's testimony and reject plaintiff's on this issue. As to (b), the employee who was allegedly threatened is no longer in the company's employ. The Court refused the company a continuance to make a further effort to bring this employee to court from another state where he now resides. The evidence of the threat is in the record, albeit in hearsay form, and when taken in full context, it supports the company's position here as well. Even as to plaintiff's testimony, which his counsel states is uncontradicted, it need not inevitably be accepted by me as true. County Asphalt, Inc. v. Lewis Welding & Eng. Corp., 444 F.2d 372, 377-378 (2 Cir. 1971); Purcell v. Waterman Steamship Corp., 221 F.2d 953, 954 (2 Cir. 1955). This is especially so here where there were other indications plaintiff was not recounting truly the events of the incidents in suit. Thus, for example, he testified to making some statements, and denied making others, to Mrs. Girtanner, then (in December, 1967) the company's plant nurse. Now no longer in its employ, she, like the other ex-employee, testified and flatly contradicted plaintiff's testimony in material particulars; and, once again, I felt impelled by the tests applied, as above set forth, to accept her testimony and reject plaintiff's where they were in conflict.
[8] Plaintiff assails the Union's position, taken at a Third Step grievance meeting, that "We do not intend to defend the employee's threatening actions." (Ex. P-4). This remark was directed at a company reference to past actions as well as that taken in December, 1967. Be that as it may, the Union did "defend" the December, 1967, action at arbitration by contending that no threat had been made.

Cf. Steinman v. Spector Freight System, Inc., supra. There a contractual "final and binding" arbitration determination was against the plaintiff employee, who then filed an unfair labor practice charge with the NLRB. A decision issued that the union had not fairly represented the employee in grievance and arbitration and a rehearing was ordered. The hearing body refused to grant a rehearing. Held: reversing the District Court, plaintiff was entitled to bring a § 301 suit and was not barred by the "final and binding" contractual provision, because he "has been effectively denied a fair hearing on the merits of his claim in the arbitration process * * *." As indicated, the facts in the instant case readily distinguish it from Steinman.