**Luis FAJARDO, Plaintiff,**

**v.**

**FOODTOWN SUPERMARKETS d/b/a Mayfair Supermarket, Inc. and Local 1262, Defendants.**

Civ. A. No. 87–2746.

United States District Court, D. New Jersey.

Dec. 29, 1988.

---

**4.** Post-judgment interest on this amount shall be awarded from the date of judgment until the date of payment.

Raquel Romero, Elizabeth, N.J., for plaintiff.

Tomar, Seliger, Simonoff, Adourian & O'Brien, Haddonfield, N.J., for defendant Local 1262 UFCW.

Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein, Woodbridge, N.J., for defendant Mayfair Supermarket, Inc.

## OPINION

WOLIN, District Judge.

## INTRODUCTION

The complaint in this action was filed on or about May 28, 1987 in the Superior Court of New Jersey by Luis Fajardo, plaintiff, against Mayfair Supermarkets, Inc. ("Mayfair") and Local 1262, United Food & Commercial Workers Union ("Union"). The plaintiff alleges that defendant Mayfair improperly discharged him for six weeks and transferred him to another store location despite his seniority status and without a grievance proceeding. Furthermore, plaintiff alleges that defendant Union has refused to protect and enforce plaintiff's rights as it is obligated to do through grievance and arbitration proceedings.

On July 10, 1987, defendants filed a petition for removal on the grounds that the subject matter of the dispute was within the original jurisdiction of the United States District Court pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.

This matter is now before the Court on co-defendants' motions for summary judgment, by which they seek dismissal of the instant Section 301 suit against them.

For the reasons set forth below, the motions of defendant Mayfair and defendant Local 1262, United Food & Commercial Workers Union are granted.

## STATEMENT OF FACTS

Plaintiff, Luis Fajardo, has been employed by Mayfair Supermarket, Inc. since 1966. He is represented by a labor organization known as Local 1262, United Food & Commercial Workers, with whom Mayfair entered into a collective bargaining agreement dated April 9, 1984. The agreement governs various terms and conditions of employment and provides that any grievance or dispute may be referred to arbitration by either party. Furthermore, the company by-laws provide that the Union has "exclusive authority to submit grievances to arbitration, withdraw grievances, settle and compromise grievances and decline to invoke the grievance procedures of a collective bargaining agreement."

Throughout the duration of his employment, plaintiff has been disciplined on several occasions. In 1981, he was discharged due to drinking on company premises after signing out of work without authorization and refusing to leave the store when asked to do so. After filing a grievance on his behalf, the Union worked out a settlement and plaintiff was reinstated. In May 1983, plaintiff was suspended for recurrent absenteeism. Subsequently, he was convicted on an unrelated matter and incarcerated for 90 days. Mayfair promptly terminated plaintiff again. After a grievance filed by the Union on plaintiff's behalf was denied, the Union called for arbitration of the dis-

pute. The arbitration hearing of March 26, 1984 resulted in a settlement whereby plaintiff was reinstated with back payment of pension benefits, no loss in seniority, credit for service, and payment of $1,000. The agreement was reduced to writing and agreed to by plaintiff.

The incident leading to plaintiff's present grievance occurred on October 15, 1986, when plaintiff had a disagreement with store supervisor, Pete McCann. It appears that McCann criticized plaintiff's work performance and indicated to plaintiff that he was going to transfer him from the produce department to the "front end" of the store. Plaintiff strongly objected to such a transfer, and harsh words were exchanged between the two. As a result, McCann discharged plaintiff for insubordination, claiming that plaintiff had threatened him with physical harm.

On approximately October 16, plaintiff contacted William Rovensky, the Union's business representative, and reported that he had exchanged harsh words with Pete McCann and that McCann had discharged plaintiff. On October 21, Rovensky arranged to meet with plaintiff, at which time plaintiff submitted a written statement outlining the October 15 incident, as well as a completed grievance report.

On October 28, plaintiff and Rovensky met with McCann, personnel manager Dan Petruzzi, and store manager Keith Ramey. At that meeting, McCann maintained that plaintiff had threatened his life and that plaintiff was terminated for insubordination to the store supervisor.

Subsequently, Rovensky contacted Union field director Harvey Whille, who arranged a meeting on November 25, 1986 with Anthony Petrillo, Director of Operations, to discuss plaintiff's termination. Whille first met with plaintiff on the morning of November 25, at which time plaintiff explained the October 15 incident. Whille then attended a meeting with Petrillo, McCann and Art Johnson, Director of Human Resources. At that time Mr. Petrillo

expressed his belief that plaintiff was a dangerous individual who showed great hostility toward management. Petrillo claimed that he no longer wanted plaintiff in the store and that the dispute between Mayfair and Fajardo could not be resolved without arbitration. By the end of the meeting, McCann offered to reinstate plaintiff on the condition that he would accept a transfer to the frozen food department of the Irvington store.[1]

Whille phoned plaintiff later that day to inform him of the offer of settlement. Plaintiff told Whille that he did not want to work in "frozen foods" and that he did not like the Irvington area. Whille advised plaintiff that this settlement was the best that could be reached and that he should report to the Irvington store. Whille further stated that the Union would do everything possible to assist plaintiff should he have any problems in the Irvington store. Plaintiff subsequently accepted the offer by returning to work on December 1, 1986 at the Irvington store.

Upon arriving at the Irvington store, plaintiff claims that he phoned Mr. Whille to request arbitration of his transfer, but was told that there could be no arbitration. Apparently Whille explained to plaintiff that the transfer was part of the settlement of his discharge grievance and was not subject to attack under the collective bargaining agreement.

On January 14, 1987, the company sent plaintiff two checks for two weeks back pay as part of the settlement agreement. Through counsel, however, plaintiff returned the money to the company on March 26, 1987 and requested a formal resolution of the dispute by means of an arbitration hearing. Plaintiff's counsel threatened to file suit to enforce plaintiff's rights under the collective bargaining agreement if an arbitration hearing was not instituted on plaintiff's behalf.

Plaintiff did in fact file suit on May 28, 1987 in the Superior Court of New Jersey. In response, counsel for the Union wrote to

---

**1.** As part of the settlement, the company also agreed to provide two weeks back pay to plain- tiff.

plaintiff's counsel informing her that the suit should have been commenced in the United States District Court rather than the Superior Court and that the grievance had nevertheless been fully resolved. Further, defendant's counsel stated that the suit was frivolous and that the Union would seek sanctions and attorneys' fees pursuant to Federal Rule 11.

According to the Union by-laws, after being informed of the local union's disposition of his grievance, a member has 15 days to file an appeal to the Executive Board. The Executive Board will consider the appeal at its next regular meeting, and advise the member of its decision within 30 days. Finally, any member who does not appeal the local union's disposition of his grievance is deemed to have acquiesced in such disposition. *See* By-laws, Article XVII, "Appeals of Member From Local Unions' Disposition of Grievances". Plaintiff admits in his deposition that he has not at any time filed an appeal with the Union.

## DISCUSSION

### 1. *Summary Judgment Standard*

When the moving party establishes that "there is no genuine issue as to any material fact, and that [it] is entitled to a judgment as a matter of law," summary judgment must be granted. (Fed.R.Civ.P. 56(c)). Once the movant has met that burden, the opposing party must set forth specific facts that show that a genuine issue exists and cannot rest upon mere allegations or denials of its pleadings. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In other words, the opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Finally, the facts must be viewed in the light most favorable to the non-moving party and any reasonable doubt as to the existence of a genuine issue of fact must be resolved against the moving party. *Continental Insurance Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982). With these

principles in mind, the Court now examines the defendants' contentions.

### 2. *Summary Judgment as to the Union*

A. Whether the Union's Refusal to Arbitrate Amounts to Bad Faith.

Plaintiff contends that the Union's investigation of his grievance and refusal to arbitrate were motivated by bad faith. Plaintiff's Opposition Memorandum at 4. In response to that allegation, the Union claims that it did not arbitrate plaintiff's grievance simply because it was settled, with plaintiff's consent, on November 25, 1986.

Alternatively, the Union contends that even if plaintiff had not consented to the settlement, the terms of the settlement were "eminently fair to plaintiff," and it was within the legal authority of the Union to make such a settlement, with or without the employee's consent.

 The law provides that because a union is authorized to act as the exclusive bargaining agent for the employees, it has a duty to provide fair representation in the negotiation, administration, and enforcement of the collective bargaining agreement. *Findley v. Jones Motor Freight*, 639 F.2d 953, 957 (3d Cir.1981). To establish a breach of the duty, an employee must show that the Union's conduct was "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967); *see Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). The law affords the Union a "wide range of reasonableness" in performing its functions subject to "good faith and honesty of purpose." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563–64, 96 S.Ct. 1048, 1056, 47 L.Ed.2d 231 (1976); *Donadio v. Supermarkets General Corp.*, No. 86–4567 (D.N.J. March 1987) (opinion of Debevoise, J., read into record) (appended to defendant Union's brief). "Proof that the union may have acted negligently or exercised poor judgment is not enough to support the claim of unfair representation." *Bazarte v. United Trans-*

*portation Union,* 429 F.2d 868, 872 (3d Cir.1970).

The Court in *Vaca* recognized that a union may not arbitrarily ignore a meritorious grievance or treat it in a perfunctory manner, but noted that an individual employee does not have an absolute right to arbitration of his grievance regardless of the provisions of the collective bargaining agreement. *Vaca,* 386 U.S. at 191, 87 S.Ct. at 917. The court stated that through the provision of a grievance and arbitration procedure by which the union is given discretion to "supervise the grievance machinery and invoke arbitration, the employer and the union contemplate that each will endeavor in good faith to settle grievances short of arbitration. Through this settlement process, frivolous grievances are ended prior to the most costly and time-consuming step in the grievance procedures." *Id.*

■ If an individual employee could unilaterally invoke arbitration of his grievance regardless of its merit, the settlement procedures of the contract would be substantially undermined and it would be doubtful, according to the *Vaca* Court, whether "parties to collective bargaining agreements would long continue to provide for detailed grievance and arbitration procedures." *Id.* A union is required, as statutory agent of the employees, to make decisions as to the merits of particular grievances in good faith, and in a nonarbitrary fashion. The Union will not be deemed to be in breach of its duty of fair representation and thereby open to suit by the employee for breach of contract, "merely because it settled the grievance short of arbitration." *Id.* at 92, 87 S.Ct. at 918; *see also Bazarte v. United Transportation Union,* 429 F.2d 868, 872 (3d Cir.1970). A union is only required to take those grievances to arbitration which it believes honestly and in good faith have merit. *Vaca,* 386 U.S. at 193, 87 S.Ct. at 918; *Singer v. Flying Tiger Line, Inc.,* 652 F.2d 1349, 1355 (9th Cir.1981). In fact, a union is obligated *not* to press grievances which it believes lack merit:

> The union has an obligation in exercising its power as bargaining agent to act fair-

ly under the collective bargaining agreement and not to assert grievances or press grievances which it believes in good faith do not warrant such action. An employee, therefore, is subject to the union's discretionary power to settle or even to abandon a grievance, so long as it does not act arbitrarily, and this is true even if it can later be demonstrated that the employee's claim was meritorious.

*Donadio v. Supermarkets General, Inc., supra* (citing *Bazarte,* 429 F.2d at 872).

After an investigation and determination of the merits of a grievance, "the Union is entitled to weigh the costs and benefits of going to arbitration, including the chances of success and the monetary costs." *Cox v. C.H. Masland & Sons,* 607 F.2d 138, 145 (5th Cir.1979). Thus, it is clear that the law permits wide discretion to the Union in handling the grievances of its members.

■ In the present matter, there is no genuine dispute as to the fact that the Union dealt fairly with plaintiff in settling his grievance. Had the Union ignored plaintiff's complaint or processed the same in a perfunctory manner, it may have breached its duty of fair representation. However, the Union, particularly Mr. Whille, made every effort to assist plaintiff in the resolution of his grievance and determined in good faith that the particular grievance at issue was not appropriate for arbitration. The Union arranged meetings with representatives of management concerning plaintiff's grievance and plaintiff had the opportunity to present his arguments to both Union and management representatives. There is no evidence, and indeed plaintiff points to none, which indicates that the Union acted other than in good faith in handling plaintiff's grievance. Thus, summary judgment in favor of the Union is proper.

B. Whether Mr. Whille Settled Plaintiff's Grievance on November 25, 1986.

■ Plaintiff contends that he did not agree to the settlement reached between Mr. Whille and Mayfair on November 25, 1986. However, Mr. Whille phoned plain-

tiff on that date to inform him of the terms of the settlement, and although he protested the transfer, plaintiff returned to work on December 1 pursuant to the terms of such settlement.

■ In further support of his contention, plaintiff claims that the settlement was somehow defective due to the lack of memorialization. However, in his deposition, Mr. Whille states that settlements of grievances are commonly not in writing, but done verbally. Defendant Exhibit 3, at 70–71.

Thus, plaintiff cannot prevail on this point, as he was fully aware of the settlement offer.

### C. Whether Plaintiff's Complaint is Barred by the Statute of Limitations.

■ The Third Circuit has held that the six-month statute of limitations recognized by the Supreme Court in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) is applicable to cases which have not proceeded to arbitration upon the allegation that a particular Union failed to file a grievance, improperly handled it, or prevented the grievance from being processed further. *Perez v. Dana Corp.*, 718 F.2d 581, 588 (3d Cir.1983); *see also Taylor v. Ford Motor Co.*, 761 F.2d 931, 933–34 (3d Cir.1985), *cert. denied*, 474 U.S. 1081, 106 S.Ct. 849, 88 L.Ed.2d 890 (1986); *Federation of Westinghouse Independent Salaried Unions v. Westinghouse Electric Corp.*, 736 F.2d 896, 901–02 (3d Cir.1984) (six-month limitations period applies to section 301 suits seeking to compel arbitration).

As set forth above, the facts of the case at bar point to the conclusion that plaintiff knew on November 25, 1986 that the Union had settled his grievance. The law provides that an employee's cause of action accrues when he is notified that his union will not arbitrate his grievance. *Hayes v. Reynolds Metals Co.*, 769 F.2d 1520, 1522 (11th Cir.1985). Although he was so informed on November 25, 1986, plaintiff did not file his complaint until May 28, 1987, more than six months after the limitations period began.

Plaintiff contends that Mr. Whille admitted in his deposition that he told Mayfair that the Union was prepared to arbitrate the dispute. This Court notes that such an admission is not contained in Mr. Whille's deposition transcript, and in fact, Mr. Whille stated that plaintiff never told him that he was rejecting the offer of settlement entirely or that the case should go to arbitration instead of plaintiff returning to the job. Deposition of Harvey Whille, at 57–58. Thus, it must be concluded that plaintiff was aware of the refusal to arbitrate on November 25, 1986, and that the limitations period began on this date. In light of such conclusion, plaintiff's complaint is time-barred and summary judgment in favor of defendants is proper.

### D. Whether Plaintiff Exhausted His Internal Union Remedies.

■ The fact that plaintiff did not exhaust his internal union remedies before filing suit for breach of the duty of fair representation buttresses the conclusion of this Court that plaintiff's suit cannot properly be maintained. The Supreme Court has stated:

Where internal union appeals procedures can result in either complete relief to an aggrieved employee or reactivation of his grievance, exhaustion would advance the national labor policy of encouraging private resolution of contractual labor disputes. In such cases, the internal union procedures are capable of fully resolving meritorious claims short of the judicial forum ... exhaustion of internal remedies could result in final resolution of the employee's contractual grievance through private rather than judicial avenues. When a collective bargaining agreement provides mandatory grievance machinery in which the employee's rights are processed by union representation, the contractual requirements must be followed. Failure to exhaust these remedies may be a valid defense to a suit brought by an employee against his employer for a violation of the collective

bargaining agreement. *Findley*, 639 F.2d at 957.

*Clayton v. United Auto Workers*, 451 U.S. 679, 692, 101 S.Ct. 2088, 2097, 68 L.Ed.2d 538 (1981).

In the present case, the Union provided a means by which plaintiff could have disputed the Union's settlement of his claim. According to the Union, plaintiff's next course of action, if he was unhappy with the settlement, would have been to file an appeal with the Executive Board. Defendant's supporting memorandum at 9–11. An employee must file an appeal within 15 days from the date on which he is told of the Union's disposition of his case. If plaintiff had done so, the Executive Board would have been required to respond within 30 days of its next meeting. In addition, because the collective bargaining agreement allows the Union 90 days in which to demand arbitration, plaintiff's grievance could have been reactivated. Therefore, through the internal union procedure available to him, plaintiff could have obtained a complete remedy. In light of plaintiff's failure to file an internal appeal, his present suit cannot be maintained and summary judgment in favor of both defendants is proper.

### 3. *Summary Judgment as to Mayfair*

#### A. Whether Plaintiff May Proceed Against His Employer.

■ Defendant Mayfair contends that plaintiff must first establish the Union's breach of its duty before proceeding against Mayfair. Plaintiff, on the other hand, contends that "in Section 301 suits, the employee must first establish that the employer wrongfully discharged him in violation of the collective bargaining agreement." There is no support for plaintiff's contention, and an examination of the applicable case law reveals that Mayfair should prevail on this point.

The case of *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 62–63, 101 S.Ct. 1559, 1563–1564, 67 L.Ed.2d 732 (1981) sets forth the standard where an employee's underlying claim against his employer is based on the collective bargaining agreement:

It is not enough ... for an employee such as respondent to prove that he was discharged in violation of the collective bargaining agreement. 'To prevail against either the company or the Union, petitioners must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union.'

*Id.* (Quoting *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570, 96 S.Ct. 1048, 1058, 47 L.Ed.2d 231 (1976)).

In other words, an "indispensable predicate" for an action under Section 301 is not a showing under traditional contract law that the discharge was a breach of the collective bargaining agreement, but instead a demonstration that the Union breached its duty of fair representation.

Thus, before proceeding against Mayfair, plaintiff in the present matter must first prove that the Union breached its duty of fair representation. As set forth previously, plaintiff has not met his burden of proffering sufficient evidence from which a jury could find bad faith on the part of the Union. Thus, summary judgment on behalf of Mayfair is proper.

#### B. Whether There Has Been a Violation of Article 5(B)(3) of the Contract.

Plaintiff asserts that the Union's refusal to arbitrate his grievance violates the "unambiguous contractual provision" of Article 5(B)(3) of the contract, thereby indicating bad faith on the part of the Union. This argument is without merit in that Article 5 of the contract, entitled "Regular Work Week and Maximum Hours," is applicable to scheduling of work hours for full-time employees with seniority, and is not applicable to intra-store transfers. Article 26, entitled "Transfers," is applicable in the present case, since plaintiff's transfer was pursuant to the settlement of his grievance. However, Mr. Whille stated in his deposition that an in-store departmental transfer would not amount to a violation of the collective bargaining agreement. Deposition of Harvey Whille, at 66–67. Furthermore, plaintiff asserts no facts to dem-

onstrate that his potential transfer would have been prohibited by Article 26, and therefore, no issue of material fact exists as to this claim.

Nevertheless, the inability on the part of plaintiff to prove a breach of the duty of fair representation by the Union precludes any action by plaintiff against his employer (*i.e.*, Mayfair). Therefore, this Court grants summary judgment in favor of Mayfair.

## CONCLUSION

For the reason set forth above, the motions of defendants Mayfair and Local 1262, United Food & Commercial Workers Union, are granted.