**358**

Frank Lee HOCKER, Plaintiff,

v.

NAVISTAR INTERNATIONAL TRANS-
PORTATION CORPORATION, et
al., Defendants.

No. C2–90–767.

United States District Court,
S.D. Ohio, E.D.

Feb. 11, 1992.

Rocco S. Fucillo, Fairmont, W.Va., for plaintiff.

Anne C. Griffen, Vorys, Sater, Seymour & Pease and Fred G. Cloppert, Jr., Cloppert, Portman, Sauter, Latanick & Foley, Columbus, Ohio, for defendants.

## OPINION AND ORDER

GRAHAM, District Judge.

This is an action under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, filed by plaintiff Frank Lee Hocker against Navistar International Transportation Corp. ("Navistar"), the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW) and Local 658, United Automobile, Aerospace, Agriculture Implement Workers of America (UAW) (hereinafter referred to as "the Union"). Plaintiff's complaint sets forth a "hybrid" § 301 action, alleging a breach of the collective bargaining agreement on behalf of Navistar, the employer, and a breach of the duty of fair representation on behalf of the Union. This matter is now before the court on the motions of the defendants for summary judgment.

The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex* and *Matsushita* effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476 (6th Cir.1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479. In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liber-*

*ty Lobby,* 477 U.S. at 257, 106 S.Ct. at 2514). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely " 'show that there is some metaphysical doubt as to the material facts.' " *Id.* (quoting *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356). Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

 Both defendants argue that they are entitled to summary judgment on the ground that plaintiff's complaint, filed on October 9, 1990, is barred by the statute of limitations. The statute of limitations applicable to hybrid § 301 actions is the six-month limitations period found in § 10(b) of the National Labor Relations Act. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The plaintiff's claim accrues when he discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation, *Adkins v. International Union of Elec., Radio & Mach. Workers,* 769 F.2d 330 (6th Cir.1985), or when the plaintiff knows or reasonably should have known of the union's alleged breach of its duty of fair representation. *Chrysler Workers Ass'n v. Chrysler Corp.,* 834 F.2d 573 (6th Cir.1987). A § 301 claim accrues against the company when it accrues against the union. *Fox v. Parker Hannifin Corp.,* 914 F.2d 795 (6th Cir.1990).

The sequence of events in the present case is not in dispute. Plaintiff was employed by Navistar (formerly International Harvester) at a plant in Shadyside, Ohio. The Shadyside plant closed in January, 1984, and plaintiff was laid off. The Union compiled a master recall list from which employees would be chosen to fill jobs that became available in other Navistar plants on the basis of seniority and qualifications.

Plaintiff applied to have his name placed on the master recall list. At first, plaintiff's name was placed on the wrong list, but this error was corrected in April of 1984. Plaintiff indicates that he is advancing no claim for damages in relation to that error.

In November of 1989, plaintiff wrote a letter to Horace Williams, a Union official, alleging that other employees were improperly recalled to the Springfield, Ohio plant ahead of him. Plaintiff's letter was forwarded to Ted Allison, the UAW International Representative for the Agriculture Implementation Department, for investigation, and Mr. Allison responded to plaintiff's letter on December 4, 1989. In January, 1990, plaintiff wrote to Mr. Allison, alleging that others were improperly recalled to Springfield ahead of him, and requesting additional information. On January 29, 1990, Mr. Allison sent plaintiff a copy of the master recall list and the seniority list for Local 658 in Springfield, Ohio.

On February 7, 1990, plaintiff again complained to Mr. Allison that other employees were improperly recalled ahead of him, and he demanded placement in the C & T unit of the Springfield plant. Ronald V. Rhine, UAW International Representative Region 2A, conducted a "complete and thorough investigation" of plaintiff's allegations. In a March 14, 1990 letter to Mr. Allison, he referred to eight employees by name and concluded that plaintiff "has not been overlooked on the C & T Master Recall List based on qualifications and seniority." Plaintiff's Depo. Ex. 7. In a letter dated March 20, 1990, Mr. Allison informed plaintiff of the results of the investigation, enclosing a copy of Mr. Rhine's letter. Plaintiff's Depo. Ex. 8. In a letter dated March 29, 1990, plaintiff listed four additional employees who were not specifically mentioned in Mr. Rhine's March 14, 1990 letter and who were allegedly improperly recalled ahead of him. In a letter dated April 10, 1990, Mr. Rhine informed Mr. Allison that he investigated the claims in regard to the four additional employees and found no error in the recall process. Plaintiff's Depo. Ex. 10. Mr. Allison forwarded this letter to plaintiff on April 17, 1990.

■ Plaintiff argues that the failure to recall him constitutes a continuing violation which extends the running of the limitations period, citing *Sevako v. Anchor Motor Freight, Inc.*, 792 F.2d 570 (6th Cir. 1986). However, the nature of plaintiff's claim is different from that found in *Sevako*. The injury in *Sevako* recurred annually due to an established bidding procedure. Here, the injuries alleged by plaintiff were the recall of employees with less seniority, with each recall constituting a completed injury, and the refusal of the Union to process his grievance, which was complete upon the refusal. These alleged injuries are not continuing in nature.

■ The next question presented is whether a genuine issue of material fact has been shown to exist in regard to when plaintiff knew or reasonably should have known that the Union had breached its duty of fair representation. The court finds that plaintiff knew or should have known, upon receipt of the March 14, 1990 letter of Mr. Rhine, that the Union had decided not to pursue his grievance as to the employees listed in that letter. No genuine issue of material fact has been established in that regard, and plaintiff's claims related to the recall of those employees accrued at some time prior to March 29, 1990, when plaintiff received the March 14 and March 20 letters of Mr. Rhine and Mr. Allison. Those claims are time-barred.

■ However, the court concludes that a genuine issue of fact exists as to the four employees who were mentioned in plaintiff's March 29, 1990 letter and who were the subject of a later investigation by Mr. Rhine. Those four employees were not specifically discussed in Mr. Rhine's previous letter, and a genuine issue of fact remains as to whether plaintiff knew or should have known that the Union would not process his grievance as to those four employees prior to his receipt of Mr. Allison's letter of April 17, 1990.

Therefore, defendants' motions for summary judgment on the basis of the statute of limitations are granted in regard to the eight employees listed in Mr. Rhine's March 14, 1990 letter, and are denied with respect to plaintiff's claims relating to the four employees referred to in Mr. Rhine's letter of April 10, 1990.

■ The Union defendants also argue that they are entitled to summary judgment due to the plaintiff's failure to exhaust internal Union procedures.

Plaintiff claims that he did in fact file an appeal which the Union failed to act on, and that therefore he should be deemed to have exhausted his union remedies. Plaintiff notes specifically his letter of April 30, 1990 to Ronald Rhine, which he contends constituted a request to appeal. In the April 30 letter, plaintiff talks about his intent to file a civil action, but does not mention any intent or desire to file an appeal. None of the other letters written by plaintiff which are in the record could be construed as expressing an intent or desire to appeal. No evidence has been produced that plaintiff made any attempt to appeal the decision of the local Union officials or to otherwise exhaust union remedies. In addition, no evidence has been presented that Union officials obstructed the appeal process or refused to allow plaintiff to pursue an appeal.

Evidence has been presented that plaintiff was or had reason to be aware of his appeal rights through information distributed in the Union's *Solidarity* magazine, and by reason of his former position as chairman of the local union at Shadyside. While plaintiff would not be held to the same standard as an attorney in drafting an appeal, the correspondence in the record does not even mention the word "appeal" and does not give any notice to the Union of plaintiff's desire to file an appeal.

■ Where exhaustion of internal remedies is mandated by a union constitution, the plaintiff is required to exhaust those remedies unless he can demonstrate that resort to those remedies would be futile. *Monroe v. International Union, UAW*, 723 F.2d 22 (6th Cir.1983). Once the union presents evidence that a member plaintiff had intra-union remedies, the burden then falls upon the plaintiff to come forward with specific facts showing that there is a

genuine issue concerning the futility of intra-union remedies. *Willetts v. Ford Motor Co.,* 583 F.2d 852 (6th Cir.1978). Inexcusable failure to exhaust union appeals bars suit not only against the union, but also against the employer. *Wagner v. General Dynamics,* 905 F.2d 126 (6th Cir. 1990); *Monroe,* 723 F.2d at 24.

The Union has submitted a copy of the Constitution of the International Union, UAW. Article 33 of the Constitution sets forth the procedures for appealing the decisions of a local union or any of its officers. The appeals process includes review by the membership of the local union, the International Executive Board or an appeals committee delegated by the Board, the International President and the Public Review Board. Under Article 33, Section 5 of the Constitution, union members are required to exhaust these appellate remedies provided by the Union prior to commencing a civil action. Thus, the Union has demonstrated that mandatory intra-union remedies were available to plaintiff, and plaintiff must now produce facts to demonstrate that his failure to exhaust these remedies should be excused.

Exceptions to the exhaustion requirement are set forth in *Clayton v. International Union, UAW,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). These include: 1) whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; 2) whether the internal union appeals procedure would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and 3) whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. *Id.* at 689, 101 S.Ct. at 2095.

Plaintiff first alleges that he could not have obtained a fair appeal on his claim due to the hostility of Union officials. However, he has failed to come forward with specific facts which establish hostility. The UAW Constitution provides for appeals to the UAW Appeals Committee, the UAW International Union, and the Public

Review Board (PRB). The PRB is composed of individuals who are not affiliated with the Union. The Sixth Circuit has held in previous cases involving the UAW appeals procedure at issue here that the plaintiff failed to show that the PRB would deny him a fair hearing. *Wagner,* 905 F.2d at 128; *Monroe,* 723 F.2d at 24 n. 3. Plaintiff here has likewise failed to show that he would not have received a fair appeal before the UAW Appeals Committee, the International Union and the PRB.

Plaintiff argues that the Union would not be able to afford him complete relief. He notes the agreement between the Union and Navistar providing that Navistar will not be held liable for backpay which is claimed to be owing as the result of errors in implementing the recall list. Plaintiff further argues that only Navistar can provide reinstatement.

The agreement barring Navistar's liability for backpay does not establish an exception to the exhaustion requirement, since it would preclude plaintiff's recovery of backpay from Navistar in this court as well, and therefore equal relief would be available to plaintiff from the union process. *See Reinhardt v. International Union, UAW,* 636 F.Supp. 864 (E.D.Mich.1986). In addition, the Union has conceded that if plaintiff obtained a favorable ruling on appeal and prevailed on his grievance, the Union would be liable for backpay. Plaintiff has likewise not established that resort to the intra-union procedures could not result in his reinstatement. If on appeal he had convinced the Union to reverse its position and to file a grievance with Navistar, the Union may have succeeded in securing his reinstatement. · Plaintiff has introduced no evidence to the contrary.

Further, as the Supreme Court stated in *Clayton,* 451 U.S. at 692, 101 S.Ct. at 2097, exhaustion is mandatory when "internal union appeals procedures can result in *either* complete relief to the aggrieved employee *or reactivation of his grievance* [.]" (Emphasis added). The availability of grievance reinstatement through the Union appeals "mandates exhaustion and renders consideration of the availability of full re-

lief unnecessary under *Clayton.*" *Wagner,* 905 F.2d at 129.

Plaintiff argues that the Union appeal procedure would be inadequate to reactivate his grievance because a grievance was never filed on his behalf. However, plaintiff has submitted no facts which would indicate that a grievance could not have been filed if he had pursued his union remedies. The purpose of the intra-union appeal would have been to seek review of the decision of the local Union officials declining to file a grievance in his behalf. There is no evidence that a grievance could not have been filed if plaintiff had been successful on appeal. In fact, in *Howell v. Ford Motor Co.,* 115 L.R.R.M. 2063 (W.D.Ky.1983), the court noted that most current UAW contracts with major automobile and agricultural implement manufacturers allow for the reinstatement of grievances where internal union procedures result in the reversal of the Union's initial decision.

During the oral argument on defendants' motions for summary judgment in this case, counsel for the Union indicated that there was no provision in the collective bargaining agreement which would preclude presentation of a grievance even at this point. Counsel for Navistar agreed that if the Union filed a grievance now on plaintiff's behalf, and further established that he should have been recalled, he would be reinstated in the next available position. Thus, it appears not only that a grievance could have been filed on plaintiff's behalf if he had pursued a successful appeal, but also that a grievance filed presently by the Union would be considered by Navistar. Plaintiff has not met his burden in these summary judgment proceedings of producing evidence tending to show that the grievance could not be reactivated.

■ At the oral hearing on defendants' motions, the court posed a question concerning the meaning of the *Clayton* reactivation requirement. This court was concerned with whether the reactivation of a grievance refers solely to the employer's willingness to consider a grievance which would otherwise be untimely under the collective bargaining agreement, or whether reactivation also requires that the intra-union appeals procedure be currently available. Here, the time limits for filing an appeal are governed by Article 33 of the UAW Constitution. If plaintiff filed an appeal at this point, it would be untimely under Article 33. However, Article 33, Section 4(d) provides that the time limits for appeal may be waived by the International President.

The court is unaware of any authorities which expressly discuss this particular issue. However, a review of cases which have applied the *Clayton* exceptions indicates that the controlling factor is whether the grievance could have been pursued if the employee had timely utilized the union appeals system and prevailed on appeal. The Supreme Court in *Clayton* refers to the fact that the grievance was time-barred at the time that the employee first learned about the union's decision not to pursue the grievance to arbitration, and therefore even if the employee had filed a timely appeal, "the union could not have demanded arbitration even if the internal appeal had shown Clayton's claim to be meritorious." *Clayton,* 451 U.S. at 691.

In *Monroe v. International Union UAW,* 540 F.Supp. 249 (S.D.Ohio 1982), the plaintiff did not exhaust the internal appeals procedures contained in the UAW Constitution. The time limits for filing appeals which were applicable in *Monroe,* as noted *Id.* at 258, are similar to the time limits contained in the version of Article 33, Section 4 of the UAW Constitution which governs the instant case. Thus, any appeal filed by the plaintiff at the time of the trial court's decision in *Monroe* would not have been timely. Nonetheless, the court noted that an agreement between the employer and the union would have allowed for the reinstatement of the grievance if the plaintiff had been successful in the union appeals process, and further found "that the intra-union procedures which Plaintiff could have, but did not pursue, satisfy the second prong of the *Clayton* test." *Id.* at 257. The judgment of the district court was upheld on appeal in *Monroe v. Inter-*

*national Union, UAW*, 723 F.2d 22, 25 (6th Cir.1983), wherein the court held that the "trial judge thus properly concluded that the internal appeal procedures were adequate here."

A similar result was reached in *Fajardo v. Foodtown Supermarkets*, 702 F.Supp. 502 (D.N.J.1988). In that case, the union did provide a procedure for appeal, and the employee was required to file an appeal within fifteen days from the date he was informed of the union's disposition of his case. However, the plaintiff filed no appeal. The court held, *Id.* at 508, that since the union would have been able to reactivate plaintiff's grievance if a timely appeal had been filed, plaintiff could have obtained a complete remedy through the internal union procedure, and his failure to file an internal appeal precluded his § 301 action.

This court concludes that the fact that plaintiff's union appeal may now be time-barred does not mandate a finding for plaintiff on the second prong of the *Clayton* test. If the current availability of the appeals process is considered to be a component of the grievance reactivation factor in *Clayton*, then the policies behind encouraging the use of internal procedures discussed in *Clayton* would be frustrated, since many employees would deliberately bypass the union remedies, knowing that the fact that those internal union remedies would later be time-barred would excuse their exhaustion of those procedures. The interpretation of the grievance reactivation requirement which is most consistent with the labor policies referred to in *Clayton* is one which would focus on whether a viable grievance could have been filed if the employee had timely pursued and prevailed in his union appeals. Here, plaintiff has submitted no facts which would indicate that an active grievance could not have been filed on his behalf if he had timely completed the union appeals procedures available to him. Accordingly, plaintiff cannot rely on the second prong of *Clayton* to excuse his failure to exhaust.

Even if the grievance reactivation element is construed as requiring that union appeals procedures be currently available, the record reveals that the International President is willing to examine plaintiff's appeal and to determine whether to waive the Article 33 time limits. Plaintiff has declined to pursue this avenue. Thus, plaintiff has not exhausted an available internal remedy which may afford him the opportunity for a delayed appeal.

Finally, plaintiff argues that pursuing his union remedies would have unreasonably delayed his pursuit of judicial remedies. However, plaintiff has produced no facts to support this exception, and there is no evidence that plaintiff's pursuit of an appeal would have unduly delayed judicial proceedings in this case.

Plaintiff has failed to produce facts to show that there is a genuine issue of material fact concerning whether plaintiff's failure to exhaust internal union procedures should be excused. Plaintiff has not established that his failure to exhaust should be excused, and the Union defendants are entitled to summary judgment on this basis. As previously noted, inexcusable failure to exhaust union appeals also bars suit against the employer. *Wagner*, 905 F.2d at 107. Accordingly, Navistar is also entitled to summary judgment on this ground.

Summary judgment is hereby awarded to defendants, and this case is dismissed without prejudice.